## Ferdinand Siegel et al. v. Harriet Blair Borland.

1. CONVEYANCES—*Assumption of Mortgage Debts by the Grantee.*— In order to impose a personal liability upon a grantee to pay a pre-existing mortgage upon premises purchased by him, there must be either an express agreement to that effect or a retention by him of a part of the purchase price for the purpose of paying such mortgage debt.

2. SAME—*Agreement to Assume an Incumbrance as a Part of the Purchase Price may be Shown by Extrinsic Evidence.*—An agreement on the part of a grantee to pay an incumbrance on lands purchased by him may be shown by evidence other than the deeds of conveyance; extrinsic evidence may be considered for the purpose of ascertaining what was the actual consideration and for the purpose of determining whether the agreement to pay the incumbrance formed a part of such consideration.

**Foreclosure of a Trust Deed.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed upon remittitur, etc. Opinion filed February 14, 1901.

Appellee filed her bill of complaint to obtain the foreclosure of a trust deed upon certain real estate in the city of Chicago, known as the Cambridge apartment property, and joined, as parties defendant, the appellants here and others, against whom she sought to establish liability for the amount of the mortgage debt, in the event of a deficiency, by reason of the fact that they were parties to certain deeds of mesne conveyance, by which the mortgaged property had been transferred subject to the mortgage.

The bill of complaint as finally amended set forth that after the execution of the trust deed sought to be foreclosed, the mortgaged premises were conveyed by Clark,

the mortgagor, to Peck; by Peck to Bryan; by Bryan to Simmons, and that each of said grantees in turn expressly agreed to pay the said trust deed indebtedness; that afterward, said Simmons, by warranty deed, dated January 18, 1897, and recorded January 21, 1897, for an expressed consideration of $160,000, conveyed said premises to Maximilian Philipsborn; that said Philipsborn purchased said premises for and on behalf of the defendants, Ferdinand and Joseph Siegel; that said Philipsborn, by warranty deed, dated January 20, 1897, and recorded January 21, 1897, conveyed said premises, for an expressed consideration of $160,000, to Ferdinand and Joseph Siegel; that in January, 1897, prior to the dates of the deeds last mentioned, said Ferdinand and Joseph Siegel and Philipsborn, were the owners of all the stock in a corporation organized under the laws of Illinois, known as The Grand, and although the title to said premises was taken in the name of said Siegels and Philipsborn, as hereinbefore stated, the contract for the purchase of said premises was made by The Grand, and the consideration received by said Simmons for said premises was a stock of goods and fixtures valued at $125,000, and stated in said contract to be owned by said corporation, and as an additional consideration for said purchase, The Grand demanded payment of said Simmons of the sum of $25,000 to apply upon the indebtedness secured by said trust deed; that said Simmons received the stock of goods above set forth, and paid said sum of $25,000; that said sum of $25,000 was paid to said Ferdinand and Joseph Siegel and said Philipsborn, as stockholders of The Grand, and upon payment of said consideration, the title to said premises was conveyed to said Siegels and Philipsborn, as above set forth, and thereupon said Ferdinand and Joseph Siegel entered into the enjoyment of said premises; that said Ferdinand and Joseph Siegel and Philipsborn, as stockholders of The Grand, were the real parties in interest in said sale, and paid the consideration for said premises, and received the $25,000 as above stated; that by virtue of the conveyances, and the

facts above set forth, said Peck, Bryan, Simmons, Philipsborn, The Grand, Ferdinand and Joseph Siegel became personally liable to pay the indebtedness secured by said trust deed, and now are personally liable to pay the amount due under said trust deed to the complainant, appellee.

The amended bill makes the Clarks, Peck, Bryan, Simmons, Ferdinand and Joseph Siegel, Philipsborn, The Grand, and other persons, defendants; waives the oath to their answers, prays for an accounting as to the amount due complainant for principal and interest and solicitor's fee, for a sale of the premises to satisfy the amount which may be so found due, with complainant's costs, and, if the proceeds of sale shall be insufficient to pay the indebtedness due, that she may have a decree for the deficiency against the Clarks, Peck, Bryan, Simmons, Philipsborn, The Grand, and Ferdinand and Joseph Siegel, and for general relief.

The Siegels answered, admitting execution of trust deed and notes; admitting conveyance by Simmons to Philipsborn; denying that Philipsborn bought for or on behalf of defendants, the Siegels; averring that purchase was for and on behalf of The Grand; admitting that Philipsborn conveyed to defendants and that they and Philipsborn were owners of all the stock of The Grand; averring that contract of purchase between Simmons and The Grand was upon a consideration of $135,000; denying that The Grand demanded payment by Simmons of $25,000 to apply upon the trust deed indebtedness; averring that the $25,000 was paid by Simmons to The Grand as part consideration of purchase of a stock of merchandise; denying that said $25,000 was received by defendants, the Siegels, or by Philipsborn; averring that The Grand was indebted to these defendants in an amount exceeding $100,000, and that in payment thereof The Grand caused Philipsborn to convey premises in question to these defendants; and denying that these defendants or either of them is liable to pay any part of the indebtedness secured by the trust deed sought to be foreclosed; averring that these defendants took the

premises subject to such trust deed, and have since conveyed the premises and all interest therein to one Ross.

The answer of Philipsborn is substantially the same as that of the Siegels.

The cause was referred to a master in chancery upon answers and replications thereto, and the master reported his findings as follows:

The master finds the material allegations of the bill of complaint as amended to be true, and that Simmons conveyed the premises subject to the trust deed in question to defendant Philipsborn; that Philipsborn conveyed to defendants, the Siegels, subject to the said trust deed; that these conveyances were made pursuant to an agreement between Simmons and The Grand, by the terms of which Simmons was to convey the premises in question and another block of land, known as block 44, to The Grand in exchange for a certain stock of merchandise; that said Siegels and Philipsborn were the owners of all of the capital stock of The Grand, and were its directors, and, in accordance with a resolution of the board of directors, the title to said real estate so conveyed was taken in the name of Philipsborn as a matter of convenience, and then the deed to the Cambridge was delivered by Philipsborn to the Siegels; that the contested question is, who, in addition to the original makers of the notes, are liable to pay the balance of said debt of $75,000, in the event the land does not sell for enough to satisfy it in full. Upon this question the master reports as follows:

"It is true that on the face of the deed to Philipsborn, and the deed from him to the Siegels, there is no express agreement on the part of the grantees to pay the incumbrance, but under the decisions of this State it is clear that evidence other than the deeds can be considered to ascertain what was the actual consideration, for the purpose of determining whether the agreement to pay the incumbrance formed a part of the consideration."

The master then, after reciting the terms and conditions of the agreement providing for the exchange of the Cambridge property and block 44 for the stock of merchandise

between Simmons and The Grand, concludes that it was a part of the contract, of which the conveyance is a part, that The Grand should assume and pay the trust deed indebtedness here in question, and this conclusion is based in effect upon the finding that in the transaction The Grand only paid in fact the difference between the expressed consideration for the conveyance of the property and the amount of the incumbrance.

As to the liability of the Siegels, the master finds, in effect, that their position in relation to The Grand is the same as the position of The Grand in relation to Simmons, *i. e.*, that the transfer of the property from the ownership of The Grand to the Siegels was upon a consideration which involved the payment of the incumbrance.

The master recommended that the defendants, including all the appellants, be held to a personal liability for any deficiency upon the foreclosure. The master also finds that $25,000 was in fact paid by Simmons to The Grand for the purpose of applying the same upon the trust deed indebtedness, and that a liability to thus apply such amount in case of a deficiency would arise; but the recommendation goes further and recommends that upon the broader ground of an assumption of the entire trust deed indebtedness the defendants be held liable to the full extent of any deficiency.

The chancellor, upon the coming in of the master's report, found that the master had erred in his conclusions as to such assumption of the trust deed indebtedness by the appellants; but found with the master upon the fact that the $25,000 had been paid by Simmons and received by Philipsborn for the express purpose of applying it on the debt, and therefore concluded that there was a liability upon the part of appellants to the extent of $25,000 in the event of a deficiency to that amount.

A decree was based upon these findings by the chancellor. The deficiency after sale amounted to more than $41,000. The personal decree against appellants is for $25,000 and interest, amounting to $29,502.78.

From this decree the appeal here is prosecuted.

BINSWANGER & JACKSON and JAMES E. MUNROE, attorneys for appellants.

WILSON, MOORE & MCILVAINE, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

A personal liability was sought to be charged upon appellants upon two different grounds: first, upon the theory of an assumption of the entire mortgage indebtedness by the appellants, and secondly, upon the theory that the sum of $25,000 had been paid to appellants to apply upon the indebtedness, and hence they were equitably bound to so apply it, and in the event of a deficiency, the mortgagee could enforce the obligation.    The chancellor found against the appellee and in favor of the appellants upon the first contention, but upon the second contention found that the appellants were liable to the extent of the $25,000 received by them, and interest thereon.

The chancellor having found against the first of these contentions, and the decree being in no manner based upon it, we would have no occasion now to consider it, were it not that counsel for appellee, in seeking to sustain the decree, again present to this court the proposition that upon the evidence the appellee was entitled to a personal decree for the entire deficiency, and hence that this decree for a lesser amount must be sustained, irrespective of the fact of a receipt by appellants of the $25,000.

It seems to be well settled, by the authorities and by decisions in this State, that in order to impose a personal liability upon a grantee to pay a pre-existing mortgage upon the premises purchased by him, there must either be an express agreement to that effect or a retention by him of a part of the consideration, i. e., the purchase price, for the purpose of paying such mortgage debt.  Jones on Mortgages (2d Ed.), Secs. 748, 749, 750, 751 and 752; Comstock v. Hitt, 37 Ill. 542; Hammer v. Johnson, 44 Ill. 192; Fowler v. Fay, 62 Ill. 375; Rapp v. Stoner, 104 Ill. 618; Dean v. Walker, 107 Ill. 540; Drury v. Holden, 121 Ill. 130;

Robinson Bank v. Miller, 153 Ill. 244; Crawford v. Nimmons, 180 Ill. 143; Richardson v. Venn, 84 Ill. App. 601.

There is here no agreement expressed in the deeds of conveyance by which it can be said that appellants, or either of them, contracted to assume and pay the mortgage debt. There was such an agreement expressed in the conveyances to Peck, to Bryan and to Simmons; but not in the conveyances to appellants Philipsborn and the Siegels. The provision in the deeds by which they took title, was only that the conveyance was made subject to the mortgage. The words must be considered as words of qualification and not as words of contract. We have, therefore, to inquire whether the evidence establishes the fact that the amount of the mortgage debt was included in the consideration of the sale by Simmons to Philipsborn — that is to say, whether it was a part of the purchase price and retained by the purchaser to be applied by him in discharge of the mortgage debt.

We understand the authorities above cited as basing the doctrine announced upon the establishment of the fact of a retention by the grantee of part of the purchase price for the purpose of applying it upon the mortgage debt, from which fact an implied contract arises to so apply the part retained. We do not understand that it is meant by any of these cases to announce that because the amount paid for a parcel of land, bought subject to mortgage, when added to the amount of the mortgage debt, makes up the amount of the true value of the land, therefore from such fact alone a contract to assume and pay the mortgage debt can arise. Mere computation can not thus create a contract. It would seem clear that there must be something more, viz., that which amounts in effect to a withholding of a part of the purchase price, included in the actual consideration, for the purpose of paying the debt.

In Drury v. Holden, *supra*, the court said :

" The deed to Drury was made expressly subject to the incumbrances. It appears that the mortgage debt was included in and formed a part of the consideration of the

Siegel v. Borland.

conveyance.   *   *   *   It was expected that he would pay it, and Drury, in effect, retained from the purchase price the amount of the incumbrance to pay it.   If, then, Drury should afterward pay the mortgage debt it would be but just that he should do so; it would be in accordance with the arrangement between him and Daggett; it would, in truth, be but the payment of part of the purchase price of the lots.   That price he ought to pay.   There was, in effect, property retained in his hands to pay the mortgage debt, and it would seem inequitable for him to appropriate it to his own use and not apply it, as contemplated, to the mortgage debt."

Does the evidence here establish that in the agreement and transactions by which the Cambridge property and block 44 were exchanged for the stock of merchandise and fixtures, the expressed consideration of transfer of the Cambridge included the mortgage debt, and that the amount of this debt was withheld by the purchasers of the Cambridge to apply on a payment of the debt?

The agreement between Simmons and Philipsborn and the Siegels, which was reduced to writing and executed in the name of The Grand, was part of the same transaction in which the deed to Philipsborn was given.   The deed was executed by Simmons and received by Philipsborn in the carrying out of the agreement.   By the terms of the written agreement the expressed consideration of the transfer of the property was $200,000.   Payments were made by appellants as follows :   Stock of merchandise at agreed value of $95,000; fixtures at agreed value of $30,000.   The remaining balance of the expressed consideration of $200,000 was not paid at all, except it be considered to have been paid by reserving of it to apply upon the mortgage debt, which was precisely in the principal sum of $75,000:.

Upon these facts, apparently, the master based his conclusion of fact that there was such a withholding of part of the purchase price as raised an implied contract to apply it on the debt.   Against this evidence there is the positive testimony of Philipsborn, the Siegels, Stetson and Mr. Binswanger, their attorney, that they positively refused to assume the payment of any part of the mortgage debt, and

that the consideration expressed in the contract and deeds was not based upon any such assumption, but was a fictitious consideration fixed upon by caprice or wish of the purchasers.

Upon all this evidence the chancellor found that facts were not established upon which an implied contract to assume and pay the debt could be based. Had the chancellor found with the master in this behalf, we are not prepared to say that we would not sustain the conclusion; nor can we say upon the conflicting evidence that the chancellor's conclusion to the contrary is so against the weight of the evidence as to warrant us in disregarding it. Therefore, if the decree be sustained, it must be upon the evidence tending to establish the fact that the sum of $25,000 was paid by Simmons to the appellants for the express purpose of applying it upon the mortgage debt. The master and the chancellor agree in finding that the evidence does establish this fact. We are of opinion that this conclusion was warranted and is sustained by the greater weight of the evidence. The fact is undisputed that the sum of $25,000, partly in cash and partly in promissory notes, was paid by Simmons to the appellants in carrying out the agreement of exchange of properties. No provision for this payment was made by the agreement as first considered. There is evidence to show that the Siegels refused to go on with the exchange because they had learned that the mortgage loan of $75,000 could not be renewed for more than $50,000 thereof, and that they thereupon insisted that Simmons pay $25,000 in order that the debt of $75,000 might be reduced to $50,000, for which latter amount it might be renewed. Montgomery's testimony goes to establish this fact. Bryan's testimony as to admissions of Joseph Siegel tends thereto. The Siegels deny that the $25,000 was paid or received for the purpose of reducing the mortgage debt. The testimony of other witnesses can hardly be treated as of much weight upon this point.

We think that the master and the chancellor were fully warranted in regarding the denial by the Siegels as wholly

overcome by the other evidence. The circumstances all tend to show that the $25,000, the payment of which by Simmons is uncontroverted, was given to reduce the mortgage debt. In the written agreement the consideration fixed upon for the granting of the realty was $200,000. In the deeds themselves the amount of the expressed consideration of the two deeds was $175,000, *i. e.*, $160,000 for the Cambridge and $15,000 for block 44, a difference by way of reduction of precisely $25,000. The provision in the written agreement for the payment of the $25,000 appears in connection with the qualification as to incumbrance, and no word is contained in the writing as to why or in what behalf this payment was made. It merely provides that Simmons should pay $25,000, of which $12,000 should be in cash and $13,000 in the form of promissory notes. It is reasonable to conclude that the payment was for the reduction of the mortgage, as indicated by the testimony of Montgomery and Bryan; it is unreasonable to draw any other inference from all the facts and circumstances of the case. Therefore, we are of opinion that the decree is right in finding that the sum of $25,000 was paid by Simmons, who had become obligated to pay the mortgage debt, to appellants, who acquired the title from him, for the express purpose of applying the sum in reduction of the debt. This being so, the decree was also right in ordering that appellants apply the payment as by the agreement they were bound to do.

We are unable to accede to the contention of counsel for appellant that rules of evidence were disregarded in the admitting of extrinsic evidence to explain the purpose of the payment of the $25,000. By admitting such evidence nothing contained in the writing was in any way contradicted or changed. It simply operated to disclose that upon which the writing was silent, viz., the purpose of the payment of the $25,000. The writing expressed the purpose and application of other payments and exchanges; but it was silent as to the purpose of the payment of the sum of $25,000. Nor do we think that the court erred in admit-

ting the written contract as varying the terms of the deeds as to the consideration. Kinzie v. Penrose, 3 Ill. 515; Sidders v. Riley, 22 Ill. 109; Drury v. Holden, 121 Ill. 130; Harts v. Emery, 184 Ill. 560.

The theory of relief, suggested by the master, to be granted upon a liability incurred by some of appellants because of their action as directors of the corporation, The Grand, in contravention of the provisions of the corporation act, can not, we think, be sustained. The bill of complaint is not framed upon any such theory. That the Siegels, who received the $25,000, are liable as well as The Grand, by which corporation the agreement was made, seems clear. No reason is suggested why Philipsborn, who took the property as first grantee, should not also be held, except as it is urged that neither he nor the Siegels are liable upon like grounds. When Philipsborn received the deed in carrying out the transaction in which the $25,000 was paid to appellants, he, as one of the real purchasers, together with the other appellants, became principal debtor for the mortgage debt to the extent of the $25,000, and to that extent Simmons became surety only.

We are of opinion that the allegations of the bill are sufficient to warrant the relief granted upon a finding that the $25,000 was paid as above indicated. It was a part of the transaction of purchase and sale, and was an assuming of the mortgage debt to that extent as part of the contract of the parties in making the sale. If, instead of paying back the $25,000, Simmons had permitted an amount of the merchandise or fixtures, equal in value to $25,000, to be withheld, the transaction would have been no different in principle.

The interest allowed by the decree is, we think, excessive. Interest was allowed from January 20, 1897, the date of the transaction, i. e., the date of the carrying out of the contract of sale, and at a rate in excess of five percentum. It does not appear that appellants could have made any partial payment upon the mortgage debt at the time of the receipt by them of the $25,000. Therefore, the interest

should be computed only from the maturity of the mort-
gage notes, at which time appellants could and should have
so applied the money. We are of opinion that appellee is
entitled only to interest at five per cent per annum from
the date of the maturity of the mortgage debt until the
date of the decree. This would make the amount due at
the time of the decree $27,524.29. If the appellee remits,
within ten days, all of the decree in excess of $27,524.29,
the decree will be affirmed as to that amount, otherwise
the decree will be reversed and the cause remanded.
Affirmed on remittitur.