## JULIA M. RAY

*v.*

## EDWIN L. LOBDELL.

*Opinion filed December 22, 1904—Rehearing denied Feb. 9, 1905.*

1. MORTGAGES—*when assumption of mortgage must be express.* One who purchases only the vendor's equity of redemption in encumbered property is not personally liable to pay the encumbrance unless he expressly assumed and agreed to pay the same.

2. SAME—*when extension agreement does not make the grantee personally liable.* One to whom the equity of redemption in encumbered property is conveyed for the benefit of the mortgagor's creditors is not impliedly bound to personally pay the encumbrance by reason of an agreement between the holder of the encumbrance and attorneys representing the creditors, extending the time of payment, where he was not present personally or by an authorized representative when the agreement was made.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This was a bill in chancery filed by the plaintiff in error in the superior court of Cook county to foreclose a trust deed executed by Willie W. Henderson to the plaintiff in error to secure the payment of his two promissory notes, for the sum of $12,500 each, upon a leasehold interest for ninety-nine years in certain real estate located upon VanBuren street, in the city of Chicago. The defendant in error, at the time the suit was commenced, held the title to said leasehold interest for the benefit of the Bankers' Land Association, and the complainant sought by her bill to hold him personally liable for any deficiency which might remain unpaid after the sale of said leasehold interest. The issues were made up and the cause was referred to a master, and upon the coming in of his report a decree of sale was entered and the leasehold interest was sold. Afterwards the master reported a deficiency,

and a decree for the sum of $26,521.08 was rendered against defendant in error, which decree for said deficiency, on appeal to the Appellate Court for the First District, was reversed, and the complainant has sued out this writ of error.

MYRON H. BEACH, for plaintiff in error.

ULLMANN & HACKER, DEFREES, BRACE & RITTER, and SEARS, MEAGHER & WHITNEY, (NATHANIEL C. SEARS, and WILLIAM BRACE, of counsel,) for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

The sole question presented in this case for determination is, at the time the defendant in error acquired title to said leasehold interest did he assume and agree to pay the indebtedness secured by said trust deed in such manner as to make him personally liable in this proceeding for any deficiency which might remain unpaid thereon after a sale of said leasehold interest? There is no contention that the defendant in error, at the time he acquired title to said leasehold interest, assumed or agreed to pay the encumbrance thereon by express contract, but it is urged the law raised an implied promise on his part to pay, by reason of the fact that the amount of the trust deed was deducted from the purchase price at the time that he acquired title to the leasehold interest, the contention of plaintiff in error being that the leasehold interest was purchased by the defendant in error for $40,000; that the encumbrance, $25,000, was deducted therefrom; that $15,000 of the purchase money was paid, and that $25,000, the balance of the purchase money, remained in his hands with which to pay said encumbrance, hence his liability.

There is but little chance for controversy as to the law governing this case, as the rule is well settled in this State, if the encumbrance is deducted from the purchase price (*Comstock* v. *Hitt,* 37 Ill. 542; *Rapp* v. *Stoner,* 104 id. 618; *Siegel*

v. *Borland,* 191 id. 107;) the grantee becomes liable for the debt. The controlling question, therefore, is one of fact.

It appears from the evidence that Lobdell, Farwell & Co., a corporation, of which the defendant in error was president, was engaged in loaning money and handling commercial paper in the city of Chicago; that the Harvey Lumber Company, also a corporation doing business in the city of Chicago, had outstanding notes, drafts, accounts, etc., to an amount exceeding $88,000, a portion of which indebtedness was held by Lobdell, Farwell & Co. and the balance of which had been negotiated by said company; that to secure said indebtedness said Harvey Lumber Company had conveyed to a trustee or trustees its equity in five pieces of Chicago real estate, including said leasehold interest; that subsequently it became apparent to the Harvey Lumber Company and its creditors that it could not pay said indebtedness, at least in cash, and an arrangement was made between said Harvey Lumber Company and its creditors that it should convey or have conveyed to the defendant in error, for the benefit of said creditors, three pieces of said real estate and said leasehold interest, subject to the encumbrances thereon, in full payment and satisfaction of the indebtedness for which said real estate and leasehold interest were then held as security. Prior to such transfers an expert examined the different pieces of real estate, including the leasehold interest, proposed to be taken in satisfaction of said indebtedness and fixed a valuation thereon. In his report to the creditors of said company said leasehold interest was valued at $40,000, encumbrance $25,000, equity $15,000. Thereafter the three pieces of real estate and the leasehold interest, which, according to said report, were valued at $208,000 and which were encumbered to the amount of $95,600, leaving an equity therein of $112,400, were conveyed to the defendant in error in payment and satisfaction of $88,072.32 in the notes and accounts of the Harvey Lumber Company, which notes and accounts were surrendered and canceled. During the negotiations be-

tween the Harvey Lumber Company and its creditors, the creditors of the Harvey Lumber Company, for the purpose of handling the properties which the Harvey Lumber Company proposed to convey to the defendant in error for the benefit of said creditors, entered into a voluntary association known as the Bankers' Land Association. After said properties were conveyed to defendant in error, he paid with the funds of the association the back taxes and ground rent upon the lease, and the interest upon the notes secured by the trust deed to January 1, 1894, and $5000 upon the note first maturing, and $2500 of said note was extended one year, and the balance thereof, $5000, and all of the other note was extended five years. The deed conveying the leasehold interest to the defendant in error was made to him individually, and recited a consideration of one dollar and that the deed was made subject to said trust deed.

It clearly appears that the creditors of the Harvey Lumber Company, who were mainly banking corporations and individuals engaged in loaning money, several of whom were not residents of the State, who had purchased the paper of said Harvey Lumber Company, had not, at the time title to said leasehold interest and other properties was taken by defendant in error, voluntarily entered upon the purchase of real estate in the city of Chicago, but found themselves the holders of a large amount of over-due paper of a corporation which was unable to meet its obligations and whose assets consisted mainly of equities in heavily encumbered Chicago real estate. To meet the situation then confronting them, they accepted, in satisfaction of the obligations which they held against said corporation, the equities which it held in three pieces of Chicago real estate and said leasehold interest, which equities said corporation conveyed or caused to be conveyed to defendant in error for their benefit. The creditors of the Harvey Lumber Company, for whom the defendant in error took title to said leasehold interest and other properties, did not purchase said properties for cash, but released the in-

debtedness of the Harvey Lumber Company to the members of the association in exchange for the equities of the Harvey Lumber Company in said properties, including said leasehold interest. No purchase money was agreed to be paid to the Harvey Lumber Company, and after the delivery of deeds to the defendant in error no purchase money remained in the hands of the members of the association or in the hands of the defendant in error. While it may be true that the valuations fixed by the expert and afterwards carried on to the books of the association were the valuations that controlled the creditors of the Harvey Lumber Company in determining whether they would accept deeds to said properties, including said leasehold interest, and release and discharge the indebtedness of the Harvey Lumber Company held by the members of the association, it cannot be said that the leasehold interest was purchased at $40,000 or any other sum. The Harvey Lumber Company owed the members of the association $88,072.32. It owned equities which the expert estimated of the value of $112,400, which it offered to give the members of the association in exchange for the release and satisfaction of said indebtedness. The members of the association had the choice to accept the equities of the Harvey Lumber Company in said properties and release said indebtedness, or to enforce their lien. The members of the association elected to accept a transfer of the equities and released the indebtedness. Under such circumstances it would be inequitable to decree that the creditors, had deeds been made directly to them, had bound themselves to pay the encumbrances upon said properties in full, by reason of the fact they had employed an expert to report upon the value of the properties, the amount of the encumbrances and the equities of the Harvey Lumber Company remaining therein, and had used such report as the basis of their calculations in making a settlement of the indebtedness of the Harvey Lumber Company. If it would be inequitable to hold the creditors of the Harvey Lumber Company liable for said encumbrances

it would be doubly so to hold the defendant in error liable for the payment thereof, who took title to said premises only for the benefit of said creditors.

In *Rapp* v. *Stoner, supra,* the consideration stated in the deed was $15,000, and the deed was made subject to three mortgages, aggregating $10,070. The difference between these two amounts was paid by the grantee by the conveyance to the grantor of a Kansas farm, consisting of five hundred and sixty acres. It was sought to hold the grantee personally liable on the ground the amount of said mortgages had been deducted from the purchase money and remained in his hands, by reason of which fact it was contended he was equitably bound to pay said mortgages. The court, on page 624, said: "In this case there is, perhaps, no doubt, from the evidence, that the parties, in making the trade, estimated the value of the Stoner lots at some $15,000. The encumbrances were known to be some $10,000 and the Kansas lands estimated at some $5000; but there was no such deduction of the ten thousand dollar encumbrance from the purchase money agreed to be paid, and leaving it in the hands of the purchaser, as to create a personal liability. It may be, if Reiss had paid $15,000 to Stoner for the property and the latter had left in the hands of Reiss $10,000 of the amount, to be paid by him in discharge of the mortgages, the money might, under such circumstances, be regarded as a trust fund and Reiss as a trustee, holding the money for the benefit of those who had the mortgages. But no such case is presented by this record. Here was a mere exchange of Kansas lands for encumbered property. Doubtless Reiss expected, when he made the trade, that he would, in time, pay off the encumbrances and clear the property of all liens. Unless he entertained this expectation it would have been folly on his part to have made the trade and paid anything for a deed from Stoner; but the fact that he expected to pay the mortgages, and even paid some interest to holders of the mortgages, cannot be held sufficient to fix his personal liability."

In *Siegel* v. *Borland, supra,* there was an exchange of properties, the property acquired by appellant being subject to a mortgage. There was no express agreement on his part to pay the mortgage, but it was held by the court below that an implied agreement to assume the same arose out of the transaction. In reversing the decree, on page 111, it was said: "The deed was to be made, and was made, subject to the trust deed. The contract and deed not only failed to imply any assumption of the debt, but rather excluded the implication. Complainant can only establish the liability of appellants by proving a contract to assume and pay the debt, or some part of it. To sustain the decree, the facts proved must amount to an agreement to pay the $25,000 upon the debt secured by the trust deed. It is true that a contract may be implied, and that if the amount of an encumbrance is included in and forms a part of the consideration which a grantee promises to pay for premises, and he retains that part of the purchase price, the law will create a personal liability against him, on the ground that he has agreed to pay such indebtedness. In such a case the law presumes that the grantee has agreed to apply the money so retained for the purpose of paying the encumbrance. Either there must be an express assumption of the indebtedness, or the amount must be allowed in the purchase price so that the law will imply the promise."

The rule to be deduced from the authorities is, if the vendee of land encumbered by mortgage or trust deed purchases only the vendor's equity of redemption, he is not personally liable to pay the encumbrance resting upon the land unless he expressly assumed and agreed to pay the same. If, however, he purchases land for its full value and retains in his hands, out of the consideration, a sufficient sum to satisfy the encumbrance, he may be held personally liable for the payment thereof, even though he has not expressly agreed to pay the encumbrance resting upon the land. (*Comstock* v. *Hitt, supra; Hammer* v. *Johnson,* 44 Ill. 192; *Fowler* v.

*Fay,* 62 id. 375; *Rapp* v. *Stoner, supra; Drury* v. *Holden,* 121 Ill. 130; *Consolidated Coal Co.* v. *Peers,* 166 id. 361; *Crawford* v. *Nimmons,* 180 id. 143.) We think it clear in this case the equity of redemption of the Harvey Lumber Company in said leasehold was all that was sold to its creditors and conveyed to defendant in error, and as defendant in error did not expressly agree to pay the encumbrance resting on the leasehold, he cannot be held personally liable to pay the balance due upon said notes and trust deed.

The further contention is made that at the time the taxes, ground rent, interest and $5000 upon the first note were paid, in consideration of the extension of the time of payment of the balance due upon the notes and trust deed, the defendant in error agreed to pay said indebtedness. An arrangement for the extension was made by the attorneys of the Bankers' Land Association with the husband of plaintiff in error, who represented her. The defendant in error was not present at the time the contract for the extension of the time of payment was made, and he and the attorneys of the association concur in testifying that the attorneys who represented the association when such extension was obtained had no authority to represent the defendant in error. While there is ample evidence in the record that the time of payment of the balance of the notes was extended by the plaintiff in error, the evidence in the record does not show that the defendant in error ever agreed, in consideration of such extension, to pay the balance due upon said notes.

The question whether the same rule as to implied assumptions of indebtedness obtains in case of one taking title as trustee as would apply if he took title in his individual capacity has been discussed in the briefs. In the view we have taken of this case it has been unnecessary to consider that question.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*