(No. 12629.—Judgment affirmed.)
JOHN U. METZGER *vs.* CHARLES F. EMMEL *et al.*—
(CHARLES F. EMMEL *et al.* Plaintiffs in Error, *vs.*
LISETTA SPRINGER, Defendant in Error.)

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. PLEADING—*affirmative relief in equity cannot be given on answer.* Affirmative relief in equity cannot be given upon an answer, whether the relief is sought against the complainant or a co-defendant.

2. MORTGAGES—*when answer need not be stricken as asking affirmative relief.* On a bill to foreclose a mortgage, where the only controversy is between the mortgagor and his grantee to determine what property shall be first sold, the answer of the grantee setting out the facts connected with the conveyance and tending to show the equities to be in her favor as against the mortgagor need not be stricken as asking affirmative relief, where the mortgagor first raises the question in his answer, asking that the property conveyed be sold first in order to protect his home place.

3. SAME—*application of rule of sale in inverse order of alienation.* Where mortgaged property is sold without any clause in the deed subjecting it to the incumbrance, property remaining in the grantor and subject to the mortgage should be sold first on foreclosure; but where a deed is made subject to a mortgage incumbrance the rule of sale in the inverse order of alienation does not apply, and if the amount of the incumbrance is part of the consideration the grantee is liable therefor.

4. SAME—*true consideration in deed may be shown by parol evidence.* In a proceeding to foreclose a mortgage, a grantee of the mortgagor, though the deed recites that it is subject to the mortgage, may show that the true consideration for her deed was the mortgagor's indebtedness to her to the full value of the property conveyed and that their agreement was that other property of the mortgagor covered by the mortgage should be sold first in case of foreclosure.

5. SAME—*when the doctrine of marshaling of assets may be applied.* Where a conveyance of mortgaged property by the mortgagor is in the nature of security for another debt of his, in a proceeding to foreclose the mortgage the doctrine of the marshaling of assets may be applied to protect the grantee against a prior sale of the property, where the mortgagor has other property which is subject to the mortgage.

6. Same—*the doctrine of marshaling of assets stated.* Where a creditor has a lien upon two securities with which to make his debt and another party has an interest in one of the securities, the creditor may be required first to exhaust the security in which the other party has no interest.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Fayette county; the Hon. Thomas M. Jett, Judge, presiding.

F. M. Guinn, for plaintiffs in error.

John H. Webb, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court:

John U. Metzger filed his bill in chancery to foreclose a mortgage executed by plaintiffs in error, Charles F. Emmel and Belle F. Emmel, his wife. This writ of error is brought to review the judgment of the Appellate Court affirming the decree entered in that cause.

The assignment of errors raises no question for determination between John U. Metzger and the other parties to this suit, the questions in controversy being between Charles F. Emmel and Belle F. Emmel, his wife, (hereafter referred to as the Emmels,) on the one hand, and Lisetta Springer on the other. All were defendants in the court below.

The Emmels, being indebted to G. T. Turner in the sum of $6125, gave to Turner their note secured by a mortgage on two lots in Vandalia, Illinois, and two eighty-acre farms in Fayette county, Illinois. Later this note and mortgage were assigned to John U. Metzger. The Emmels and the widow of Fred Emmel, deceased, father of Charles F. Emmel, on March 14, 1917, conveyed by warranty deed of that date to Mrs. Springer the two farms described in the mortgage, together with other real estate, for the consideration

of $10,588.10. The two lots in Vandalia were not included. After describing the real estate conveyed this clause was inserted in the deed: "The above last three described tracts being subject to $6125 mortgage given to G. T. Turner." The tracts mentioned included the two farms described in the mortgage. Metzger, as holder of the legal title to said note, brought suit to foreclose his mortgage on the two lots in Vandalia and the two farms in Fayette county, making Charles F. Emmel and Belle F. Emmel, the makers of said note, Lisetta Springer, owner of the equity in the two farms, and Herschel Donaldson and Hick Davis, occupants of part of the premises, defendants. The bill of complaint sets forth the execution of the note and mortgage, default in payment and provisions of the mortgage as to foreclosure. The bill also sets forth the conveyance from the Emmels to Mrs. Springer of the two farms in Fayette county, and that Mrs. Springer is the owner of the same subject to the mortgagee's interest. The bill prays that the defendants be required to answer, asks for an accounting, and, in default of payment of the amount found to be due, that the mortgaged property be sold as the court may direct.

On May 18, 1917, the Emmels answered the bill, admitting execution of the note and mortgage, the assignment of the note and the conveyance to Mrs. Springer. The answer then states that at the time of the execution of the note and mortgage the Emmels occupied the two lots in Vandalia as a homestead and have continued to so occupy the same; that at the time they conveyed the two farms in Fayette county to Mrs. Springer the conveyance was made and accepted subject to the mortgage. The answer further states that the decree of sale should provide for selling the lands conveyed to Mrs. Springer first, and that if said lands bring sufficient to discharge the mortgage indebtedness and costs then the lots in Vandalia should not be offered for sale.

Mrs. Springer's answer was filed subsequent to the answer of the Emmels, and after admitting the indebtedness

set forth in the bill, the execution of the warranty deed to her by the Emmels and the widow of Fred Emmel, deceased, stated that the lands were acquired subject to a mortgage, but that there were certain qualifications as to the deed to the lands being accepted subject to the mortgage; that she is a widow, unable to readily read and write English understandingly and that she has to depend upon others for information; that Fred Emmel, now deceased, and father of Charles F. Emmel, acted as her agent and adviser, and that she had great confidence not only in him but also in Charles F. Emmel; that she acted upon their advice in her business affairs; that they attended to her loans, and that the loans were usually made in the name of Charles F. Emmel and were then indorsed in blank by him and turned over to her; that in 1913 Charles F. Emmel wanted to borrow from her the sum of $1320 and offered as collateral security a note for $2200 purporting to have been signed by Frank C. Eckard, H. A. Bingaman and Herbert Sonnemann; that she furnished $1100 of the amount and her son Herman $220; that Emmel gave his two notes for the amounts and assigned the Eckard-Bingaman-Sonnemann note to her, cautioning her to say nothing about the note so assigned by him, as these persons were directors in the bank and were not in the habit of giving notes and that they would not like it known; that in 1916 Charles F. Emmel again wanted a loan in the sum of $550, and offered as collateral security a note purporting to have been signed by John U. Metzger and E. M. Doyle for $1100, and that her daughter furnished the money for this loan, Emmel giving his own note for the amount of the loan and assigning the Metzger-Doyle note, at the same time cautioning her to say nothing about it; that she afterward acquired the title to the notes given her son and daughter; that for nearly two years prior to his death Fred Emmel was in poor health and that Charles F. Emmel did all the business; that in 1917 Charles F. Emmel sent a written order to her ask-

ing that she deliver to the bearer a note, mortgage and abstract covering a loan of $600 which she held against W. C. Miller, and that she complied with this request; that in January, 1917, upon further request from Charles F. Emmel she delivered to him a note for $900, secured by a mortgage given by James M. Hopkins; that later in January, 1917, Charles F. Emmel came to her and asked for all her notes and mortgages, stating that his father wanted them and that they needed attention. These notes amounted to $5125, and Charles F. Emmel was the payee in said notes and he had indorsed each of them in blank. Copies of all the notes and mortgages are incorporated into the answer. The answer further stated that Fred Emmel died intestate on March 3, 1917, leaving his widow, Edythe V. Emmel, and Charles F. Emmel, his only son and heir; that he left his affairs in a tangled condition, and that thereupon she employed counsel to secure from Charles F. Emmel the notes and mortgages she had given him; that she found it was impossible to secure the same, they having been placed out of his control; that Charles F. Emmel wanted to make some sort of settlement with her; that he returned one note of $550 given by Nancy Wall; that she became satisfied that the collateral notes held by her were forgeries and that she was out $10,588.10,—practically all she had; that Emmel's mother was also anxious to have the matter settled, and that Emmel represented that in addition to the two farms described in the mortgage he became, by reason of the death of his father, the owner, with his mother, of another tract of land known as the Wilberton farm, and also a part of a vacant lot in Vandalia; that his father left sufficient money to pay all his debts; that the question of values and equities was fully considered; that Emmel was very anxious to get the matter settled, and stated that the home place, being the two lots in Vandalia and included in the mortgage held by Metzger, should be sold first in foreclosure, and that but a small burden, if any, would rest

upon the tracts conveyed to her; that Emmel stated that his wife would join in the deed, and that the deed was accordingly made, the consideration being the amount of her claim of $10,588.10, which represented the amount of the notes and mortgages which Emmel failed to return to her, together with the amounts of money borrowed; that she did not become responsible for the mortgage indebtedness, nor was such indebtedness a part of the consideration price of the land, nor was the amount of said mortgage debt deducted from the price and held or retained by her. The answer asks that in case of sale the home place, being the two lots in Vandalia, be sold first to satisfy the mortgage indebtedness.

The Emmels moved to strike the answer of Mrs. Springer from the files for scandal and impertinence, which motion was overruled by the court. A replication was filed and the cause referred to the master in chancery to take proofs. Proofs were taken. The chancellor approved the master's report and entered a decree of foreclosure in favor of the complainant. The chancellor found, among other things, that as between the Emmels and Mrs. Springer the equities were with Mrs. Springer; that Emmel executed the deed in order to get possession of the forged notes in her possession; that one of the moving considerations which induced Mrs. Springer to accept the deed from the Emmels and the widow of Fred Emmel was that the two lots in Vandalia, they being the home place, would discharge the greater part of the mortgage indebtedness and that at least one of the mortgaged farms conveyed to her would be clear, meaning that the home place should be sold first; that Emmel's wife was not a party to the understanding; that during the pendency of the suit Emmel conveyed the home place to his wife and that the Emmels then mortgaged the same to F. M. Guinn, solicitor for the Emmels; that whatever interest Emmel's wife took by virtue of the deed from him to her, as well as whatever interest Guinn took

by virtue of the mortgage from the Emmels to him, was taken *pendente lite* and subject to all the equities of Mrs. Springer; that the scrivener who prepared the deed inadvertently and by mutual mistake inserted in the deed that the conveyance was made subject to a mortgage indebtedness in the sum of $6125; that the Emmels have a homestead estate to the extent of $1000 in the home place as against Mrs. Springer; that the two lots in Vandalia, known as the home place, should be first exposed for sale, and that out of the proceeds the homestead interest of the Emmels, amounting to $1000, should be paid to those entitled thereto and the balance applied to the mortgage debt, and that the remainder of the real estate covered by the mortgage and conveyed to Mrs. Springer, or so much thereof as might be necessary, be sold to pay the balance of the mortgage indebtedness, and that in case when the remainder of the real estate is sold sufficient is not realized to discharge the mortgage indebtedness and costs, so much of the $1000, being the amount of the homestead, as is necessary be used for that purpose. A decree was entered in accordance with the foregoing findings, and the Emmels excepted and prayed an appeal to the Appellate Court. The Appellate Court affirmed the judgment of the trial court, and the cause is brought here by *certiorari*.

Owing to the nature of the assignment of errors we have stated the pleadings and findings of the chancellor at length. The controversy finally resolves itself into the question as to the order in which the real estate conveyed by the mortgage given by the Emmels to Turner, and in turn assigned to Metzger, shall be offered for sale. The Emmels contend that the tracts conveyed to Mrs. Springer should be offered for sale first, and that if they bring sufficient to discharge the mortgage indebtedness and costs, the two lots in Vandalia, known as the home place, shall not be offered for sale, while Mrs. Springer contends that these two lots in Vandalia shall first be offered for sale, and if they bring

sufficient to discharge the mortgage indebtedness and costs that the tracts conveyed to her shall not be sold. There are certain questions raised by the assignment of errors which we will dispose of before passing upon the above and most vital question.

In the petition for *certiorari* the petitioner contended for the proposition that the chancellor erred in refusing to strike the answer of Mrs. Springer from the files, for the reason that the relief prayed for had no foundation laid for it in the answer and that the answer asked for affirmative relief, which may only be granted upon a cross-bill. Only slight reference is made to this proposition in the brief for the Emmels but sufficient reference is made for us to pass upon the question. It is a general rule of practice in chancery that affirmative relief cannot be given upon an answer, (*White* v. *White,* 103 Ill. 438; *Cox* v. *Spurgin,* 210 id. 398;) and this rule governs whether the relief is sought against the complainant or a co-defendant. (*Howe* v. *South Park Comrs.* 119 Ill. 101.) Much, however, depends upon the scope and purpose of the litigation in determining whether a cross-bill is necessary. (*Nyburg & Provine* v. *Pearce,* 85 Ill. 393; *Iglehart* v. *Crane & Wesson,* 42 id. 261.) If a cross-bill be filed by one whose rights are fully disclosed by his answer responsive to allegations in the original bill, it will be stricken on motion. (*Newberry* v. *Blatchford,* 106 Ill. 584; see, also, *Chicago and Great Western Railroad Land Co.* v. *Peck,* 112 Ill. 408.) In the instant case the bill sets forth that Mrs. Springer is the owner of part of the real estate covered by the mortgage by virtue of a warranty deed executed by the Emmels to her, subject to complainant's mortgage, and Mrs. Springer in her answer admits the allegations in the bill as to her ownership. Her answer then sets up facts as to how she became the owner, and asks that in selling in foreclosure, the home place, which was included in the mortgage but not conveyed to her, be sold first, as was agreed at the time

the deed was made, in order that she might be kept whole in a transaction wherein Charles F. Emmel had by gross fraud obtained her money. The Emmels in their answer, which was filed prior to Mrs. Springer's answer, ask that the land mortgaged and conveyed to Mrs. Springer be sold first in order to protect them. That which Mrs. Springer asks in her answer is only incidental to the foreclosure, and, were it not for the clause in the deed with reference to the mortgage indebtedness, we apprehend that the chancellor could rightfully have controlled the order of the sale had the Emmels and Mrs. Springer not raised the question. However, since the Emmels raised the question in the first instance in their answer, they cannot now be heard to complain of the failure of the chancellor to strike from the files Mrs. Springer's answer, which contained the same matter. We find no reversible error in the failure of the chancellor to sustain the motion of the Emmels to strike the answer of Mrs. Springer from the files.

It is next contended that by reason of the clause in the deed from the Emmels to Mrs. Springer (the above last three described tracts being subject to $6125 mortgage given to G. T. Turner) the court erred in ordering the master to offer the lots in Vandalia, Illinois, known as the home place, for sale first. The master was ordered to retain the sum of $1000 from the sale price (that being the amount of the homestead of the Emmels in these two lots) until it could be determined whether sufficient would be realized from the remainder of the mortgaged property with which to discharge the mortgage indebtedness and costs,—*i. e.*, under this order the Emmels were to receive the amount of their homestead interest ($1000) if the homestead interest, or some part thereof, was not required to discharge the mortgage indebtedness and costs. There can be no doubt that Mrs. Springer would have been entitled to have the home place exposed for sale first had it not been for the foregoing clause in the deed, (*Iglehart* v. *Crane & Wesson,*

*supra,*) but where a sale is made subject to a mortgage incumbrance the rule of sale in the inverse order of alienation by the mortgagor does not apply. (*Monarch Coal and Mining Co.* v. *Hand,* 197 Ill. 288.) Where, in purchasing premises which are incumbered, the amount of the incumbrance is taken into account in fixing the consideration and becomes part of the consideration, the purchaser thereby becomes liable for the amount of the incumbrance. (*Drury* v. *Holden,* 121 Ill. 130; *Siegel* v. *Borland,* 191 id. 107.) In the instant case the record discloses that it was expressly agreed that Mrs. Springer was not to be liable for the amount of the incumbrance until the other property of the Emmels was exhausted. Computations were made with reference to the value of the land being conveyed, and in making these computations the land was figured at its value without reference to the mortgage. In other words, the land free of the mortgage was figured and not the value of the equity.

In this connection it is contended on the part of the Emmels that the admission of oral testimony as to an understanding between Charles F. Emmel on the one hand and Mrs. Springer and her counsel on the other, with reference to which property should first be exposed for sale in case of foreclosure, was error. We think the law is well settled in this State that the true consideration in a deed may always be shown by parol evidence. (*Drury* v. *Holden, supra; Union Mutual Life Ins. Co.* v. *Kirchoff,* 133 Ill. 368; *Worrell* v. *Forsyth,* 141 id. 22.) The agreement between Charles F. Emmel and Mrs. Springer was a natural one under the circumstances and it would be inequitable to refuse to enforce it. (*Kern* v. *Beatty,* 267 Ill. 127.) She was unable to read and write to any degree of understanding and placed implicit confidence in him until she discovered her mistake. Charles F. Emmel was in dire straits. He knew that his crooked dealings were known by Mrs. Springer and her counsel,—dealings for which he could be criminally prosecuted,—and he was exceedingly anxious to

avoid such prosecution, and one of the means to avoid it was to get possession of the evidence of his criminal acts. This he did, in part, in getting back the collateral notes. The evidence shows that he was willing to make any sort of agreement which would settle his affairs with Mrs. Springer, and it was with this situation confronting him that the deed was made. We think the evidence as to the understanding between Charles F. Emmel and Mrs. Springer as to the order in which the mortgaged property should be exposed for sale was properly admitted.

With this understanding properly in evidence, to our view the moving consideration which induced Mrs. Springer to accept the deed was the fact that in case of foreclosure the home place would be sold first. Evidently, she would not have accepted the deed had she understood that the mortgaged lands conveyed to her would first be subject to sale, for in such case her equity in the lands would be extinguished and her claim against Emmel for more than $10,000 would be discharged and she would get nothing. The chancellor protected the homestead interest of the Emmels in the home place in the decree in accordance with the provisions of section 4 of the Exemption act, (Hurd's Stat. 1917, p. 1494,) and no reversible error was committed in ordering the home place exposed for sale first. Further, if the conveyance to Mrs. Springer be considered in the nature of a mortgage security for the claim due by Charles F. Emmel and the estate of Fred Emmel, deceased, then, under the doctrine of marshaling of assets, Mrs. Springer would be entitled to have the home place sold first. That doctrine is, that where a creditor has a lien upon two securities with which to make his debt and another party has an interest in one of the securities, that party has a right to compel the creditor first to exhaust the security in which the other party has no interest. *Chicago and Great Western Railroad Land Co.* v. *Peck, supra.*

The decree entered by the chancellor was within the scope and purpose of the bill and pleadings and is in accordance with the principles of equity and justice.

Finding no reversible error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*