M. S. Erzinger, Appellee, v. Edward F. Gerrity and
Loretta Gerrity, Appellants.

Gen. No. 8,630.

Opinion filed September 20, 1933.

HUNTER & MINOR, for appellants.

WALTER C. SCHNEIDER and CHARLES W. KURTZ, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellee filed her bill to foreclose a trust deed executed by appellants, in which they conveyed to C. B. Sawyer, trustee, certain premises in Kankakee referred to in this record as the laundry property. The trust deed is dated November 1, 1924, and was given to secure the payment of one note for $15,000 due five years after date, with six per cent interest per annum, interest payable semiannually. Edward F. Gerrity and his wife Loretta M. Gerrity, and C. B. Sawyer as trustee, whom the bill alleged had no interest in said note or trust deed except as trustee, were made defendants, together with C. B. Sawyer, individually, H. H. Whittemore, Walter G. Childs, and H. Victor

McBroom, subsequent purchasers, to whom the bill alleges these premises were sold on February 11, 1925. A number of mechanic's lienholders were also made defendants who filed answers and cross-bills, but as no complaint is made of that part of the decree which fixed their rights, no further reference will be made to them.

Appellants Edward F. Gerrity and Loretta M. Gerrity filed their answer and cross-bill admitting the execution of the note and trust deed, and that appellee was the legal owner and holder thereof, and that C. B. Sawyer holds title to the premises for the benefit of himself, Whittemore, Childs and McBroom. This answer and cross-bill then alleged that on February 11, 1925, appellants sold the laundry property to Messrs. Sawyer, Whittemore, Childs and McBroom for $21,000, and that by an agreement among themselves, the legal title to said premises was taken in the name of Sawyer and the property was conveyed by appellants to him, but that $6,000 of the purchase price was paid by Sawyer, Whittemore, Childs and McBroom, who assumed and agreed to pay said $15,000 note secured by said trust deed as the remaining part of said consideration, and that by reason thereof, said Sawyer, Whittemore, Childs and McBroom are personally liable for the payment of said indebtedness. This cross-bill alleges further that after the conveyance to Sawyer, he collected the rents and paid the interest upon said $15,000 note until November 1, 1929, and that he and his associates partly repaired and altered the building on said property, which resulted in mechanic's liens being placed thereon. The cross-bill made Sawyer, Whittemore, Childs and McBroom parties defendant, along with numerous lienholders, and prayed that appellants be relieved from being decreed to pay the amount which may be due upon the $15,000 note, but that Sawyer, Whittemore, Childs and

McBroom be decreed to pay the same. Sawyer, Whittemore, Childs and McBroom answered the original bill and this cross-bill, and by their answers they admitted that Sawyer holds title to the property for the benefit of all of them. They set up the statute of frauds to the effect that there was no memorandum in writing signed by Sawyer, Whittemore, Childs and McBroom which would bind them or render them personally liable for this debt and expressly deny that they are personally liable for the $15,000 incumbrance, or any part thereof, or for any deficiency which may exist upon the sale of said premises.

After the cause was at issue, it was referred to a special master, who took the evidence, and among other things found that Sawyer, Whittemore, Childs and McBroom did not assume and agree to pay the mortgage in question, but were liable for the balance owing the lienors for work and material and that appellants were personally liable for the amount due upon the note, secured by the trust deed. The cause was heard by the chancellor upon exceptions to the master's report, who overruled them and entered a decree of foreclosure and sale as prayed for in the original bill and dismissed the cross-bill for want of equity, ordering appellants to pay the amount found due on the $15,000 note, and directing Sawyer, Whittemore, Childs and McBroom to pay the balance due the lienors, amounting to $4,908.74 and costs, and in default thereof, ordering the property be sold by the master in chancery. The decree further provided that in the event there was a sale and a deficiency, the master should report the amount thereof, and upon its confirmation, appellants should pay such deficiency with interest and that appellee should have execution therefor. From this decree, Edward F. Gerrity and Loretta M. Gerrity have prosecuted this appeal.

The evidence discloses that the husband of appellee, being the owner of the laundry property on November 1, 1924, sold it to appellant Edward F. Gerrity for $17,500, receiving therefor $2,500 in cash, together with the trust deed sought to be foreclosed in this proceeding, and the accompanying note of $15,000. On February 1, 1925, Gerrity entered into a written contract with C. B. Sawyer, by the terms of which Sawyer bound himself to convey to Gerrity certain described premises in the City of Kankakee, spoken of as the theater property for which Gerrity agreed to pay $32,000. The contract recited the manner in which Gerrity was to pay this $32,000 as follows, viz.:

"Eleven thousand dollars on or before ten days after date, execute a trust deed back on the premises above described (the theater property) for $15,000.00 due three years after date with interest at six per cent per annum, payable semiannually and convey by good and sufficient warranty deed the east 46 feet of Lots 1, 4 and 5 in Block 20, Town of Kankakee (the laundry property) subject to $15,000.00 encumbrance and interest thereon from Feb. 1, 1925, *being balance of purchase price.*"

The evidence further discloses that by a warranty deed dated February 14, 1925, C. B. Sawyer and wife conveyed the theater property to Edward F. Gerrity and Harry L. Topping for an expressed consideration of "One dollar" and Edward F. Gerrity and wife, by their warranty deed dated February 11, 1925, conveyed the laundry property to C. B. Sawyer. This deed recited that the premises therein described were conveyed "subject to an encumbrance of $15,000.00, secured by Trust Deed, now a lien against said above described property." These deeds were both acknowledged on February 14, 1932, and recorded that day at the same hour.

Through the efforts of Sawyer, a loan of $15,000 was procured from the City Trust and Savings Bank

upon the theater property, Messrs. Gerrity and Topping executing the papers therefor. The proceeds of this loan were turned over to Sawyer and this amount, together with $11,000 and the deed for the laundry property, was what Sawyer received in exchange for his deed to the theater property.

Appellants contend that Sawyer, Whittemore, Childs and McBroom are personally liable for the payment of the debt secured by the trust deed which is being foreclosed in this proceeding, having assumed and agreed to pay the note of $15,000 and interest thereon when they took title to the premises conveyed to them on February 11, 1925.

It is first insisted that the contract of February 1, 1925, is ambiguous, inasmuch as the phrase "being balance of purchase price" may be construed to mean either the balance of the purchase price of the laundry property or the balance of the purchase price of the theater property, and therefore appellants seek to invoke the rule which permits the introduction of parol evidence showing the circumstances which surrounded the parties at the time the instrument was executed, and the object which they had in view, so that the court can then give effect to the real intention of the parties whenever that can be done, without doing violence to the plain meaning of the language used. Over the objections of counsel for appellees, Mr. Topping was permitted to testify before the master that when this contract was drawn up by Mr. Sawyer, Mr. Gerrity wanted to put some words in it to the effect that Mr. Sawyer was to assume and agree to pay the $15,000 incumbrance upon the laundry property, but Mr. Sawyer said that was not necessary, as McBroom, Whittemore, Childs and himself always paid their bills; that Mr. Gerrity then said that he was not going through with the deal unless he was relieved from liability upon this incumbrance, and Mr. Sawyer inquired

of him what he was worrying about, assured him that McBroom, Whittemore, Childs and himself were worth that much money and that he would change the contract and he thereupon wrote in the words "being balance of purchase price." Gerrity also testified that he sold the laundry property to Sawyer for the contract price of $21,000, and that he purchased the theater property for $32,000, giving $11,000 in cash, a mortgage back on the premises for $15,000 and his interest in the laundry property; that he received from Sawyer for the laundry property $21,000, which was paid by the four owners of the property, agreeing to pay off the incumbrance amounting to $15,000 and giving him, Gerrity, $6,000 credit on the purchase price of the theater property, which represented his equity in the laundry property. Topping corroborated this testimony, stating that the consideration for the laundry property was $21,000 and the contract price of the theater was $32,000, of which $11,000 was paid in cash and the remaining $6,000 represented Gerrity's equity in the laundry property over and above the $15,000 incumbrance.

C. B. Sawyer testified that he and his associates agreed to trade the theater property for the laundry property for a difference of $11,000; that Gerrity wanted a loan of $15,000 on the theater property and Sawyer negotiated such a loan with the City Trust and Savings Bank; that Topping and Gerrity came to his office and said something about him and his associates assuming and agreeing to pay the incumbrance upon the laundry property of $15,000 and that he told them emphatically that they would not assume or agree to pay it; that he considered the equity in the laundry property worth very little and would not assume the payment of the mortgage and never did at any time agree to pay the mortgage, and that he does not recall writing the words "being balance of pur-

chase price'' in the contract; that while properties were exchanged, there was no sale involved, but the parties did agree upon placing a valuation of $32,000 upon the theater property and $21,000 upon the laundry property, and that the difference of $11,000 was paid in cash, the transaction being simply an exchange of equities.

H. H. Whittemore and Walter G. Childs each testified that he did not agree to assume or pay the $15,000 incumbrance on the laundry and that Sawyer was told that the only way the deal could be consummated was that neither of them would assume or be bound by the mortgage and neither at any time said to Gerrity or anyone else that he would pay the mortgage.

In our opinion the provisions of the contract and the deed are in entire harmony and neither instrument is ambiguous. Much of the foregoing evidence is clearly incompetent. The intention of the parties to this contract must be gathered from the instrument itself. What the contract says is that Gerrity was to pay $32,000 for the theater property. How was this to be done? First, Gerrity was to pay $11,000 on or before 10 days after February 1, 1925; second, Gerrity was to execute a trust deed conveying the theater property to a trustee to secure the payment of $15,000 due three years after date, with six per cent interest per annum, interest payable semiannually, and third, execute a warranty deed conveying the laundry property, said deed to be subject to a $15,000 incumbrance, this deed to be accepted by Sawyer as the balance upon the purchase price of the theater property. That this is the construction and interpretation which the parties themselves put upon this contract is evidenced by the fact that its terms were substantially carried out by Gerrity paying the cash, executing the trust deed and making the conveyance just as the contract provided. It is always competent, however, to show by

parol evidence the true consideration in a deed. *Metzger v. Emmel,* 289 Ill. 52. It is well settled that it is competent to show by parol that no consideration was in fact paid or received, or that the consideration was greater or less than or different from the one expressed. 10 R. C. L. 1042. In *Lloyd v. Sandusky,* 203 Ill. 621, the court referred to the case of *Drury v. Holden,* 121 Ill. 130, and said: ''Whenever the question has come before this court, it has been uniformly held that the statement of the amount of the consideration and acknowledgment of its receipt in the deed were formal recitals, their only operation in law being to prevent a resulting trust, and that they might be explained, varied and contradicted by parol evidence.'' The right, however, to vary or explain the consideration expressed in a written contract, or to prove that it was never paid, does not authorize the introduction of such testimony to affect the terms or validity of the contract. *Schneider v. Turner,* 130 Ill. 28.

The parol evidence therefore of what the true considerations were for the conveyances of the properties was competent and counsel for appellants earnestly insist that the undisputed evidence discloses that the agreed purchase price of the laundry was $21,000, which sum was paid by appellees crediting $6,000 upon the purchase price of the theater property, and assuming and agreeing to pay the $15,000 incumbrance upon the laundry at the time Sawyer accepted the deed therefor. In support of this contention, appellees rely on the cases of *Lange v. Bartlett,* 207 Ill. App. 422; *Siegel v. Borland,* 191 Ill. 107; *Ray v. Lobdell,* 213 Ill. 389, and several others.

In the sale of mortgaged premises, a mortgagor may sell and convey them subject to the lien of the mortgage, but under such circumstances as to impose a personal liability for the payment of the debt upon the purchaser or he may sell them subject to the mort-

gage under such circumstances as impose no personal liability upon the purchaser, or he may merely convey to the purchaser his equity of redemption. The mere purchase of land or acceptance of a deed does not render the purchaser liable for an incumbrance upon it in the absence of any agreement by him to pay it, either express or implied. To render the grantee personally liable for the payment of the mortgage debt, there must be a contract, express or implied, on the part of the purchaser, to assume the mortgage debt, for the grantee in a deed assumes no personal liability unless he so contracts or the amount of the mortgage is deducted from the purchase price. So one who purchases only the vendor's equity of redemption in incumbered property is not personally liable to pay the incumbrance. Reeve Illinois Mortgages, sec. 287, Vol. 1, page 336. "Liability upon an existing mortgage debt," continues this author, "may be assumed by deed, by a separate written agreement, or by a verbal promise, or by circumstances which raise an implied promise to pay the debt. It is fundamental that to create such a liability there must be an express promise, or the amount of the mortgage must have been deducted from the purchase price of the land so as to raise an implied promise to pay." Reeve Illinois Mortgages, sec. 288.

In *Assets Realization Co. v. Heiden,* 215 Ill. 9, the court said: "A purchaser may assume a mortgage indebtedness according to the terms of the mortgage without it being expressly so provided in the deed of conveyance, but in the absence of the written assumption, the evidence must be clear and show that the assumption was in fact made." See also *Rogers v. Herron,* 92 Ill. 583, and *Nicholson v. Nicholson Coal Co.,* 190 Ill. App. 607. If the evidence discloses that the purchaser as a part of the consideration did in fact assume and agree to pay the mortgage, or if he

withheld a part of the purchase money ''for the pur-
pose of paying the mortgage debt, the effect will be
the same as though an assumption clause appeared in
the deed and such an agreement upon the part of the
vendee is not within the statute of frauds, as a parol
promise to pay the debt of another, because it is not
his money but the vendor's, which is to be used for
such payment.'' Reeve Illinois Mortgages, secs. 291–
293.

There is nothing in the contract which expressly
bound Sawyer to assume this incumbrance, nor did the
deed executed by Gerrity and accepted by Sawyer con-
tain a provision to that effect. This deed, however,
did recite that the premises therein described were
conveyed ''subject to an encumbrance of $15,000.00 se-
cured by trust deed now a lien against said above de-
scribed property.'' In *Lange v. Bartlett,* 207 Ill. App.
422, the court held a subsequent purchaser liable for
a deficiency decree where the conveyance recited that
the property was conveyed subject to a certain mort-
gage thereon, and said ''The sole point raised is as to
whether the appellant assumed the mortgage. We
think the law is well settled that where a deed of prop-
erty is made subject to an existing mortgage, the
words, 'subject to,' in the absence of anything in the
context which would throw a light upon the intention
of the parties, do not, in themselves, show an inten-
tion on the part of the grantee to assume the mort-
gage, and that in such a case the intent of the parties
is a question of fact to be established by the evidence.''
After reviewing the evidence, the court held that not
only the parol evidence justified the findings of the
decree, but the proper construction of the words of the
contract itself placed the obligation to discharge the
mortgage squarely on the purchaser.

*Siegel v. Borland,* 191 Ill. 107, was a suit to foreclose
a trust deed and it appeared that there was an ex-

change of properties, the property acquired by appellant being subject to a mortgage. In reversing the decree of the lower court, which held that an implied agreement to assume the payment of the mortgage arose out of the transaction, the court said: "The deed was to be made, and was made, subject to the trust deed. The contract and deed not only failed to imply any assumption of the debt, but rather excluded the implication. Complainant can only establish the liability of appellants by proving a contract to assume and pay the debt, or some part of it. To sustain the decree, the facts proved must amount to an agreement to pay the $25,000 upon the debt secured by the trust deed. It is true that a contract may be implied, and that if an amount of an encumbrance is included in and forms a part of the consideration which a grantee promises to pay for premises, and he retains that part of the purchase price, the law will create a personal liability against him, on the ground that he has agreed to pay such indebtedness. In such case the law presumes that the grantee has agreed to apply the money so retained for the purpose of paying the encumbrance. Either there must be an express assumption of the indebtedness, or the amount must be allowed in the purchase price, so that the law will imply the promise."

In *Ray v. Lobdell,* 213 Ill. 389, the sole question for determination was whether the defendant in error in that proceeding, at the time he acquired title to the leasehold interest, assumed and agreed to pay the indebtedness secured by the trust deed. The deed which conveyed the property to him recited a consideration of one dollar and that the deed was made subject to said trust deed. The court, after quoting at length from the opinion in *Rapp v. Stoner,* 104 Ill. 618, and *Siegel v. Borland, supra,* said: "The rule to be deduced from the authorities is, if the vendee of land

encumbered by mortgage or trust deed purchases only the vendor's equity of redemption, he is not personally liable to pay the encumbrance resting upon the land unless he expressly assumed and agreed to pay the same. If, however, he purchases land for its full value and retains in his hands, out of the consideration, a sufficient sum to satisfy the encumbrance, he may be held personally liable for the payment thereof, even though he has not expressly agreed to pay the encumbrance resting upon the land.''

All of the authorities agree that to create a personal liability upon the part of Sawyer and his associates, there must be something in the nature of a contractual obligation amounting to an agreement by them to pay off this incumbrance. Reeve Illinois Mortgages, sec. 294. This may be an express obligation or an implied one arising from the fact that the grantee promised and agreed to pay a definite consideration for the property and that the amount of the incumbrance is a part of that consideration, for ''if the amount of the mortgage is included in and forms a part of the consideration *which the grantee promises to pay for the property,* and he retains that part of the purchase price, the law will create a personal liability against him, upon the ground that he has agreed to pay such indebtedness. . . . Where it is doubtful whether a deed of mortgaged premises binds the grantee to pay an existing incumbrance, evidence of the value of the property, or of the agreed consideration for it, and as to whether the grantee retained any of the consideration to pay the debt, is admissible to aid in construing the deed. But the implied contract to pay to the holder of a mortgage money retained for that purpose by the grantee arises only from the presumed understanding of the parties, and cannot exist when there was an express understanding to the con-

trary and a distinct refusal by the grantee to pay the debt.'' Reeve Illinois Mortgages, sec. 295.

Considering all of the parol testimony of the several witnesses in this case with reference to the true consideration of this conveyance, together with the evidence in this record as to the value of the laundry property and taking into consideration the fact that the deed itself recites that the conveyance was made subject to this incumbrance, which in our opinion is essentially different from an agreement to assume and agree to pay it and which rather excludes the implication that it was assumed, we, after a careful review of all the evidence, agree with the findings of the master who heard and saw the witnesses, and whose findings were approved by the chancellor, that Sawyer did not for himself or for his associates, nor did they for themselves, assume and agree to pay the trust deed upon the laundry property. From this record we cannot say that Sawyer and his associates promised to pay $21,000 for this laundry property, retaining therefrom a sufficient sum to pay the principal and interest upon this $15,000 incumbrance. All they did was to accept a conveyance of Gerrity's equity therein, which the evidence discloses was of little, if any value.

The decree in this case, however, is erroneous in one particular. It awarded appellee, Erzinger, an execution for any deficiency that might exist after the sale of the premises by the master. This could not rightfully have been ordered. *Hartman v. Pistorius,* 248 Ill. 568; *Attebery v. Blair,* 244 Ill. 363.

The decree of the circuit court is affirmed in all respects except that part thereof ordering an execution which is reversed. The costs of this appeal will be divided equally between appellants and appellees.

*Decree affirmed in part and reversed in part.*