## JAMES T. ROGERS *et al.*

*v.*

## WILLIAM A. HERRON *et al.*

1. PURCHASER—*when bound to pay incumbrance made by his vendor.* Where a person purchases real estate incumbered by a mortgage, and as a part of the consideration agrees to pay and discharge the incumbrance, such a contract will create a personal liability in favor of the holder of the mortgage, which the courts will enforce.

2. MORTGAGE—*merger by taking conveyance.* A prior mortgagee, by taking a conveyance from the mortgagor, does not thereby lose his lien, as against a subsequent incumbrance by mortgage, or postpone the same to that of the second one.

3. SAME—*rights of junior mortgagee.* Where the prior mortgagee takes a conveyance of the mortgagor's equity of redemption after the execution of a second mortgage by the latter, the junior mortgagee may, on a bill properly framed, redeem from the first mortgage, and have the property sold on foreclosure, regardless of the conveyance.

4. SAME—*falls with estate upon which it is given.* A mortgage given upon a leasehold interest in land for a term of years must fall with the term, and upon the expiration of the term can not be foreclosed as against the reversioner, although the bill may have been filed before the term expired.

5. SAME—*mortgagee in possession—rents and profits.* A prior mortgagee under a mortgage upon a term of years, who takes possession of the premises under a purchase of the fee from the mortgagor, who had acquired the fee after he made the mortgage, is not to be regarded as a mortgagee in possession, and as such accountable for the rents and profits to a junior mortgagee of the same term.

WRIT OF ERROR to the Appellate Court of the Second District.

This was a bill by James T. Rogers and Moses Pettengill, against Simeon J. Hicks and wife, and William A. Herron and Joseph Elder, to foreclose a mortgage given by Hicks and wife to complainants. The suit was commenced in the circuit court of Peoria county, where, on the hearing before the Hon. JOSEPH W. HOPKINS, Judge, the bill was dismissed as to all the parties except Hicks and his wife, and a decree of foreclosure entered as to the latter. The complainants

took the case to the Appellate Court on writ of error, in which court the decree of the circuit court, at the December term, 1879, was affirmed.

Messrs. COOPER & TENNERY, and Messrs. HOPKINS & MERRON, for the appellants.

Mr. D. McCULLOCH, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by James T. Rogers and Moses Pettengill, to foreclose a mortgage given by S. J. Hicks and wife to them on the 2d day of August, 1871, to secure $800 in two years from that date, on certain property in Peoria. Herron and Elder, who held a mortgage on the same property to secure $786.76, bearing date April 9, 1869, were made parties defendant to the bill, as well as the mortgagor and his wife. On the final hearing the court dismissed the bill as to Herron and Elder, and this decision is assigned for error.

It appears, from the evidence, that the fee to the lot in question originally belonged to one Sanford, who on the 12th day of October, 1866, leased the same to Hicks for five years, at a rental of $60 per annum. The lease provided that at the end of the term Hicks might elect to take a lease for a further term of five years, at a rent which would amount to six per cent on the value of the lot without improvements, and pay all taxes—the valuation of the lot to be agreed on mutually, or fixed by arbitration. Under the lease Hicks erected a house on the lot which at the time was vacant.

At the end of the five years the agent of Sanford claimed that Hicks was in default in the payment of rent, and took steps to declare a forfeiture of the lease for the default; but Hicks remained in the possession of the property until the 16th day of October, 1872, when he sold all his interest to Herron and Elder, the first mortgagees, who a short time before

had purchased the fee in the property of the legal represen-
tatives of Sanford.

The grounds of relief relied upon by the complainants in
the bill, as we understand the record, are first, that Herron
and Elder, in the purchase from Hicks, undertook as a part of
the consideration to discharge and pay the two mortgages
upon the property.  Second, that Herron and Elder purchased
the equity of redemption and improvements from Hicks, in
full satisfaction and payment of the debt and mortgage they
held on the property, which left the second mortgage held by
complainants a first lien on the property.

It is a clear proposition, that where a person purchases real
estate incumbered by a mortgage, and as a part of the con-
sideration agrees to pay and discharge the incumbrance, such
a contract creates a personal liability, which the courts will
always enforce.  If, therefore, Herron and Elder, as a part of ·
the consideration of the purchase from Hicks, agreed to pay
and discharge complainants' mortgage, they should be com-
pelled to abide by and perform their contract.  But does the
testimony establish the fact that such a contract was made?
The sale of Hicks' interest in the property was made by his
wife, he being at the time in Chicago, the other contracting '
parties in Peoria, and all he seems to know personally in
regard to the terms of the trade is, that he executed a bill of
sale and received $200.  In his testimony he says, " I do not
know, except from my wife, that when the contract for the
transfer of the said premises to Herron and Elder was made
anything was said about the Rogers & Co. mortgage.  I did
not, at or before the time of said sale, say anything to Herron
and Elder about taking the property subject to the Rogers &
Co. mortgage, and do not know that they personally agreed
to do so."

Mrs. Hicks, in her evidence, testified that she went to
"Mr. Herron on or about the 1st of October, 1872, to see
what he would do about buying the place; he said he did not
feel like paying a great deal; he said what Mr. Hicks owed

him, with the taxes he had paid, the $2000 paid for the lot, the lease money due, and when the Rogers' claim was settled, he did not feel he could pay very much." She then stated that Herron asked her what Hicks would take, and she replied, "I told him he wrote me he would take $200 for his claim." On cross-examination she said, "He did not say before we traded he would give up my husband's notes, but he spoke of· the notes and taxes, and said he could not afford to pay much else. Of the Rogers' note he spoke as I have stated. He said Mr. Hicks now owed him so much, he had to pay the taxes and $2000 for the lot, and that was the Rogers' claim and the rents due, and he did not feel like paying much more. He did not promise to pay this note, but spoke as though it would have to be settled."

In addition to this the bill of sale recites a consideration of $1500; but it contains no provision that the interest of Hicks in the property was purchased subject to the mortgages, or that Herron and Elder assumed the payment thereof. Now, if the decision of the case rested upon this evidence alone we could not regard it sufficient to bind Herron and Elder to pay the Rogers mortgage ; but Herron and Elder, who seem to be entirely credible, and whose testimony is not contradicted, both testify that they did not assume the payment of the complainants' mortgage. Under such circumstances we perceive no ground for holding—unless the clear preponderance of the evidence is disregarded—that Herron and Elder contracted to assume complainants' mortgage.

We now come to the second proposition, whether the purchase made by Herron and Elder satisfied their mortgage, and left the second mortgage a lien on the property.

It must be remembered that at the time this purchase was made Herron and Elder owned the fee, and held a first mortgage on whatever interest Hicks had in the property, and the complainants held a second mortgage on that interest. Under these circumstances Hicks sold his interest in the property to Herron and Elder, the first mortgagees. How were the rights

of the parties affected by the transaction? In *Fitts* v. *Davis*, 42 Ill. 391, where a mortgage had been executed on certain lands, and afterwards a judgment was obtained by a third person against the mortgagor, and after the rendition of the judgment the mortgagor conveyed to the mortgagee in satisfaction of the mortgage debt, it was held that the mortgagee did not, by receiving a conveyance, thereby lose his lien, nor was it postponed to a junior incumbrance by judgment. The same rule was announced in *Richardson* v. *Hockenhull*, 85 Ill. 124, and the principle that governed those cases must control here.

It is no doubt true, that if complainants had prepared their bill with the view to redeem from the mortgage of Herron and Elder, they might, upon payment of the amount due, have subjected to sale, in satisfaction of their mortgage debt, whatever interest Hicks had in the property, regardless of the sale made by Hicks to Herron and Elder; but they did not see proper to pursue this course.

There is, however, another insuperable objection to granting complainants any relief, under the evidence in the case. The mortgage they held was upon a term of years, and not upon the fee. Now, it is plain when the term expired the mortgage would fall with it. It is a serious question whether Hicks had any right of possession in the property after the expiration of the first five years; but conceding that he had, the second term would terminate in 1876, and after that Hicks had no rights in the property under the lease. This decree was not rendered until after that time, and how a decree could be rendered in favor of complainants, after Hicks' title in the property had expired under the lease, we are at a loss to understand. The fact that the bill was filed before the term expired under the lease does not affect the question. Complainants' mortgage rested entirely on the title of Hicks in the property, and when that title expired no decree could be rendered as against the owners of the fee.

It has however been suggested that Herron and Elder ought,

in equity, to account for the rents of the property from the time the bill was filed until the expiration of the term. We see no principle upon which this position can be sustained. Suppose Hicks had not sold out to Herron and Elder, but had occupied until the term had expired, could he have been required to account to the complainants for the rents? This will hardly be claimed. If Hicks, as mortgagor, was not liable to account, Herron and Elder could not be, for the plain reason that as purchasers from him they stood in his shoes, and had the same rights he had. They were not mortgagees in possession, but held the possession and received the rents as purchasers. They occupied the same position to the property as any purchaser from a mortgagor who would have the right to the possession of the property until the mortgage was foreclosed, or until turned out by ejectment.

As no error is perceived in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*