DANIEL RAPP

*v.*

C. A. STONER *et al.*

*Filed at Ottawa November 20, 1882.*

1. MORTGAGE—*personal liability of purchaser from mortgagor.* A grantee of a mortgagor who merely purchases the equity of redemption, is not liable to the mortgagee for any part of the mortgage debt not satisfied by sale on foreclosure; but if he purchases the property of the mortgagor, and as a part of the contract of purchase assumes and agrees to pay the mortgage indebtedness, he becomes personally liable to the mortgagee, and an appropriate action may be maintained against him to enforce his liability under the contract.

2. Where a party receives a warranty deed, containing a clause that it is made subject to a prior mortgage given upon the land by the grantor to a third person, this of itself will create no personal liability on the part of the grantee to pay the outstanding incumbrance.

3. A deed, for the expressed consideration of $15,000, conveyed certain lots, and recited that it was made subject to three mortgages on the property, given by the grantor, which were described, amounting to $10,191, for which conveyance, and another for a house and lot, the grantee therein conveyed to the grantor 560 acres of other land, estimated at the value of some $5000. The deed from the mortgagor provided that the grantee should pay all taxes for the year of the sale, then a lien on the property, but omitted to make provision for the payment of the mortgage indebtedness, and the proof was that the deed of the mortgagor was drawn as the parties had agreed and directed it to be made. It was *held*, that the purchaser did not thereby assume and bind himself to pay the mortgages, nor did the fact he expected to pay them in time, and even paid some interest on them, operate to fix his personal liability to the mortgagees.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Bureau county; the Hon. GEO. W. STIPP, Judge, presiding.

Mr. JOHN SCOTT, and Messrs. FARWELL & WARREN, for the appellant:

Did Reiss agree to pay the mortgages as a part of the purchase price, or did he purchase merely the equity of redemption? The written agreement by which he assumed payment of the mortgages was not abrogated or rescinded by the subsequent parol agreement, but was only modified in regard to the price. It was competent for the parties to thus vary, modify or change it, or to supplement it by a verbal agreement, changing the price, yet leaving all the other provisions in full force. *Cooke* v. *Murphy et al.* 70 Ill. 96; *Bishop* v. *Busse et al.* 69 id. 403.

The amount of the incumbrances was deducted from the purchase price of the land. This being so, the law implies an agreement to pay them, and holds the purchaser personally liable. *Comstock* v. *Hitt,* 37 Ill. 542; *Fowler* v. *Fay et al.* 62 id. 375; *Maher* v. *Lanfrom et al.* 86 id. 513; 1 Jones on Mortgages, secs. 749, 750, 758, and 2 id. sec. 1711, *et seq;* *Wilson* v. *King et al.* 23 N. J. Eq. 150; *Brown* v. *Kurtz,* 37 Iowa, 239; *Drury* v. *Tremont Improvement Co.* 13 Allen, 168; *Braman* v. *Dowse,* 12 Cush. 227; *Halsey et al.* v. *Reed et al.* 9 Paige Ch. 445; *Marsh* v. *Pike,* 10 id. 595.

*Dehors* the deed and the written agreement, Reiss promised the mortgagor and the mortgagees, respectively, to pay the mortgage debts. These promises were not collateral, but original, the consideration being, from the mortgagor, the conveyance of the property; from the mortgagees, the extension of the time of payment. And the Statute of Frauds does not apply. *Eddy et al.* v. *Roberts,* 17 Ill. 505; *Brown* v. *Strait,* 19 id. 88; *Rabberman* v. *Wiskamp,* 54 id. 179; *Runde* v. *Runde,* 59 id. 98; *Beasley* v. *Webster,* 64 id. 458; *Clifford*

v. *Luhring,* 69 id. 401; *Farley* v. *Cleveland,* 4 Cowen, 432; *Nelson* v. *Boynton,* 3 Metc. 396; *Alger* v. *Scoville,* 1 Gray, 391; *Brown* v. *Kurtz,* 37 Iowa, 239.

Mr. WILLIAM ABBOTT, for the appellee C. G. Reiss:

A rescission may be effected by entering into a contract which takes the place of, and puts an end to, the original one, or by mere agreement to rescind. 2 Parsons on Contracts, 677–681; Browne on Statute of Frauds, secs. 429–436; Fry on Specific Performance of Contracts, chap. 11, secs. 682, 696–699, *et seq; Follansbee* v. *Adams,* 86 Ill. 13; *Bishop* v. *Busse,* 69 id. 403; *Huey* v. *Grinnell,* 50 id. 179; *King* v. *Mason,* 42 id. 223.

Taking a deed subject to an outstanding mortgage, creates no personal liability on the grantee to pay off the incumbrance, unless he has by contract, expressed or clearly implied, specially agreed to do so. To charge the purchaser, there must be apt words used in the deed itself, which clearly imply an obligation intentionally created by the one party and assumed by the other, to constitute a personal obligation for its payment. 2 Washburn on Real Property, 571, 518, 545; 1 Jones on Mortgages, (2d ed.) secs. 740, 748, 749, 751–756, 761, 762, and 2 id. sec. 1712; 2 Parsons on Contracts, 547–566; *Comstock* v. *Hitt,* 62 Ill. 375; *Maher* v. *Lanfrom,* 86 id. 513; *Belmont* v. *Cowan,* 22 N. Y. 438; *Hubbard* v. *Ensign,* 19 Conn. 372.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Daniel Rapp, in the circuit court of Bureau county, to foreclose a mortgage executed by Christian A. Stoner and wife to the complainant, on certain premises in Princeton, Bureau county. The bill prays for a foreclosure of the mortgage, and a decree against C. G. Reiss, who purchased the premises of Stoner after the mortgage was executed, for the amount of any deficit after a

sale. On the hearing in the circuit court upon the pleadings and evidence, a decree was rendered dismissing the bill as to Reiss, which decree was affirmed in the Appellate Court, and the complainant in the bill has appealed to this court.

The record, although quite large, presents but a single question. Did Reiss, the appellee, when he purchased the mortgaged premises of Stoner, assume, and agree to pay, the mortgage indebtedness, or did he purchase merely the equity of redemption, subject to the mortgages on the property? If Reiss purchased merely the equity of redemption, and made no contract to pay the mortgages on the land, the decree of the circuit court was correct. If, on the other hand, Reiss purchased the property of Stoner, and, as a part of the contract of purchase, assumed, and agreed to pay, the mortgage indebtedness, he became personally liable, and an appropriate action may be maintained against him to enforce his liability under the contract.

The property involved is described as lots 3, 4 and 5, in subdivision of lot 13, in Stoner's addition to the town of Princeton, upon which had been erected a two-story brick block, divided into three stores. Prior to the sale to Reiss, Stoner had mortgaged lot 3 to E. H. Swayne, and lots 4 and 5 to John Prouty. These two mortgages were a first lien on the property. Stoner had also executed a second mortgage on lots 3 and 4 to Daniel Rapp, complainant in the bill. At the time of the sale to Reiss, August 27, 1875, the mortgage indebtedness on the three mortgages was all due, and amounted, in the aggregate, to the sum of $10,191. The deed from Stoner and wife to Reiss, for the three lots, bears date August 27, 1875. The consideration expressed is $15,000. It recites that it is made subject to mortgages, as follows: One given to E. H. Swayne, April 9, 1868, due in three years, $2000, at ten per cent interest; one given to J. Prouty, July 25, 1868, due in two and five years, $5000, at ten per cent interest; one given to D. Rapp, July 16,

1873, due in two years, $3070, at ten per cent interest. The deed required Reiss to pay all taxes for 1875, and contains the usual covenants of warranty, except as to the above incumbrances. For the conveyance of this property, and for the conveyance of a house and lot in Princeton, valued at $———, Reiss conveyed to Stoner 560 acres of Kansas lands.

The position of complainant is, that Reiss, as a part of the consideration of the purchase of the property, assumed, and agreed to pay, the mortgages upon it. Much evidence bearing upon this question was introduced on the hearing, which we have carefully examined, and while the question of fact is one not entirely free from doubt, still we are not prepared to say that the evidence preponderates against the decree rendered in the circuit court. In the first place, a proposition to trade was written out and executed by the parties, which was as follows :

"Proposition made this 24th day of August, A. D. 1875, to trade, by and between C. A. Stoner and C. G. Reiss. The said C. A. Stoner proposes to trade his brick block of three stores, located in Princeton, Illinois, including lots 3, 4 and 5, in subdivision of lot 13, in Stoner's addition to the town of Princeton, for property owned by said C. G. Reiss, located in the State of Kansas, to-wit, 480 acres of land located in Waubansee county, and 320 acres of land located in Pottawatomie county, in the said State, for the total sum of $7920,—the said C. G. Reiss to assume the incumbrances on said Stoner's property, amounting to $10,191.40. * * * The acceptance of the above trade by said C. G. Reiss is depending on the obtaining of needful extension of time on said incumbrances. This proposition is to stand good until two (2) days after the return of Mr. Jacob Miller from Pennsylvania, the trade depending on his report of Mr. Rapp's mortgage.

C. A. Stoner,<br>C. G. Reiss."

It will be observed that this proposition provides that Reiss is to assume the incumbrances on the property, but unless the proposition was adhered to by the parties in the consummation of the agreement, and became a part of the final contract which was concluded on the 27th day of August, it can have no bearing on the case. There is much evidence in the record tending to prove that this written proposition was abandoned, and a new and different contract agreed upon before the contract between the parties was closed. Weimer testified that the written proposition was canceled, and on the return of Miller from Pennsylvania a new trade was consummated, on other conditions; that the terms of the new contract were not reduced to writing. Reiss testified that a new arrangement was made, the terms of which were different from the written proposition. Indeed, there is no dispute in regard to the fact that upon the consummation of the trade there was a material departure from the terms of the original written proposition. By the original proposition 800 acres of Kansas lands were to be given in exchange for the block, but by the terms of the trade, as consummated, 400 acres were given for the block, and 160 acres for a tenement house, which was not mentioned in the original proposition. The fact that there was such a clear departure from the written proposition when the trade was finally closed, in connection with the evidence that the written proposition was rescinded, when considered in connection with the further fact that the deed conveying the lots did not bind Reiss to pay off the incumbrances, was enough, in our judgment, to justify the circuit court in holding that the written proposition was canceled by the parties, and a new agreement made.

But it is said the incumbrance was deducted from the contract price of the property conveyed by Stoner to Reiss, and this alone would create a personal liability on Reiss to pay the complainant's mortgage. There is no doubt in regard to the law, where A sells to B a tract of land for a certain speci-

fied sum of money, and receives a part of the consideration, and B, in payment of the balance, assumes and agrees to pay a mortgage on the premises, such an agreement will render B personally liable to the holder of the incumbrance. But where a party receives a warranty deed containing a clause that it is made subject to a mortgage given upon the land by the grantor to a third party, this will create no personal liability on the part of the grantee to pay the outstanding incumbrance. In this case there is, perhaps, no doubt, from the evidence, that the parties, in making the trade, estimated the value of the Stoner lots at some $15,000. The incumbrances were known to be some $10,000, and the Kansas lands estimated at some $5000; but there was no such deduction of the ten thousand dollar incumbrance from the purchase money agreed to be paid, and leaving it in the hands of the purchaser, as to create a personal liability. It may be, if Reiss had paid $15,000 to Stoner for the property, and the latter had left in the hands of Reiss $10,000 of the amount, to be paid by him in discharge of the mortgages, the money might, under such circumstances, be regarded as a trust fund, and Reiss as a trustee, holding the money for the benefit of those who had the mortgages. But no such case is presented by this record. Here was a mere exchange of Kansas lands for incumbered property. Doubtless Reiss expected, when he made the trade, that he would, in time, pay off the incumbrances and clear the property of all liens. Unless he entertained this expectation, it would have been folly on his part to have made the trade, and paid anything for a deed from Stoner; but the fact that he expected to pay the mortgages, and even paid some interest to the holders of the mortgages, can not be held sufficient to fix his personal liability. It will be observed that the deed made by Stoner to Reiss recites that the lots are conveyed subject to the mortgages, and then contains a provision that Reiss is to pay the taxes of 1875. At the time the deed was made the tax

was a lien on the land. So, too, were the mortgages. If it was the contract that Reiss was to pay the mortgages as well as taxes, why insert one and leave out the other? If it was important that the deed should contain a clause binding Reiss to pay the tax, it was of much greater importance that a clause should have been inserted embracing the mortgages, if such was the contract of the parties. But, independent of the terms of the deed, Jacob Miller, who wrote the deed, and who, at the time, had been employed by Stoner to assist in making the trade, testified expressly that he wrote the deed as he understood the parties to have agreed, and as they directed him. The execution of the deed was the final consummation of the trade between the parties, and the fact that it contains no provision binding Reiss to pay the mortgages, but declares that the property is conveyed subject to the mortgages, in connection with the evidence of Miller that the deed was written as the parties had agreed, would seem to be sufficient to lead to the conclusion reached by the circuit court,—that Reiss had assumed no personal liability under the contract.

The judgment of the Appellate Court affirming the decree of the circuit court will be affirmed.

*Judgment affirmed.*