## S. A. Wilson, Defendant in Error, v. M. L. Mundy et al., Plaintiffs in Error.

## Gen. No. 7,880.

1. DEEDS OF CONVEYANCE—*assumption clause not essential part of deed.* An assumption clause in a deed is not an essential part of the deed, but is a stranger to the deed.

2. MORTGAGES—*conveyance "subject to mortgage."* A conveyance of land by deed containing clause "subject to mortgage" creates no personal liability on the part of the grantee to pay the outstanding incumbrance, unless he has specially agreed to do so or the amount of the incumbrance has been deducted from the purchase price.

3. VENDOR AND PURCHASER—*equitable title passed under contract for exchange.* Under a completed contract to exchange land in writing and containing all of the covenants and agreements between the parties and reciting and covering all matters of consideration between the parties, equitable title to the properties was transferred to the respective purchasers just as effectually as though the deeds and conveyances had been delivered.

4. VENDOR AND PURCHASER—*vendee had right to rely upon conduct of grantor's agent.* Vendee had right to rely upon actions and conduct of agent of creditors who was trusted by him to draft a

deed and effect transfer of papers in accordance with contract and was not bound by a clause in the deed assuming payment of mortgage contrary to the intention of the parties.

5. MORTGAGES—*mortgagee cannot take advantage of fraud of mortgagor grantor.* Mortgagee cannot be permitted in a court of equity to take advantage of fraud of mortgagor grantor in inserting an assumption clause in a deed of the land.

6. PLEADING—*laches must be alleged.* In action by mortgagee seeking to hold grantee of land personally under an assumption clause where defendant set out fraud of the mortgagor in inserting the assumption clause in the deed, it was necessary for the plaintiff, if he desired to raise the issue of laches, to amend his bill and charge the fact that estopped defendant to raise fraud.

7. PLEADING—*issue raised by general replication.* The only issue raised by a general replication is as to the truth of the matters charged in the answer.

8. EQUITY—*facts warranting relief must be alleged.* No relief can be given in a court of equity unless the facts warranting such relief are alleged in the bill.

9. EQUITY—*doctrine of laches stated.* Courts of equity apply the doctrine of laches in denial of relief sought when the statutory period of limitations has not expired only when from all the circumstances in evidence to grant the relief to which complainant would be otherwise entitled will presumptively be inequitable and unjust to the defendants because of the delay.

10. CONTRACTS—*modification without consideration void.* Though rights under a contract under seal may be waived, an attempted modification which only adds an obligation upon one party is void if without consideration.

11. CONTRACTS—*not enforced in absence of consideration.* An executory contract without consideration cannot be enforced in a court of either law or equity.

12. CONTRACTS—*sealed contract not modified by parol.* A sealed executory contract cannot be altered, changed or modified by a parol agreement.

13. CONTRACTS—*seal opposite first signer renders instrument sealed.* But one seal appearing opposite name of first signer renders an instrument sealed.

Error by defendants to the Circuit Court of Tazewell county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1925. Reversed in part and affirmed in part. Opinion filed October 27, 1925.

W. J. REARDON and D. D. DONAHUE, for plaintiff in error D. D. Donahue.

R. L. RUSSELL and C. J. LYNCH, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

The questions involved in this record are: First, whether plaintiff in error, Donahue, assumed the payment of certain mortgage indebtedness held by defendant in error as mortgagee, in plaintiff in error's purchase from or exchange of lands with defendants Mundy and Scott; and second, if there was such an assumption of indebtedness, whether there was any consideration accruing to plaintiff in error for the contract.

The facts out of which this case arose are as follows: the defendants Mundy and Scott of Marshalltown, Iowa, on December 30, 1919, were the owners of a farm consisting of 280 acres of land, situated in Tazewell county, this State. On September 10, 1916, Mundy and Scott executed to plaintiff in error a trust deed to secure the payment of ten coupon notes, each for the sum of $500, drawing interest at the rate of 5 per cent per annum, and to become due on the 10th day of September, 1921. This trust deed was a first lien upon said lands. Upon October 30, 1916, said Mundy and Scott executed a mortgage to appellee to secure the payment of one note for $5,000, of the same date, which was to become due December 11, 1919, covering the same lands, and this was a second security, and there were no options of any kind in the second note or mortgage to the makers. This second mortgage indebtedness was to draw interest at the rate of 5½ per cent per annum. On the 24th day of September, 1919, by a written agreement entered into between Mundy and Scott and defendant in error this second mortgage indebtedness was extended for a period of three years from December 11, 1919, to December 11, 1922, under the same terms

and conditions provided in said note and mortgage, except the said indebtedness was to draw interest during the extension period at the rate of 6 per cent per annum, payable semiannually. The trust deed and mortgage were duly recorded. The extension agreement of the second mortgage was never recorded.

Plaintiff in error, Donahue, on the 30th day of December, 1919, was the owner of a farm consisting of 174 acres, situated in Monona county, Iowa, and there was a mortgage upon this farm of $8,000, drawing interest at the rate of 5 per cent per annum. On said 30th day of December, 1919, Mundy and Scott entered into a written contract and agreement to exchange said farm in Tazewell count, Illinois, with plaintiff in error for his 174-acre farm in Monona county, Iowa. The exchange was to be made and conveyances executed to the other party in each case, "subject to the said mortgages" and it was agreed on the part of Mundy and Scott that the said first mortgage on the Tazewell county lands was drawing interest at the rate of 5½ per cent per annum and the second mortgage at the rate of 5 per cent per annum, and Mundy and Scott further agreed, "that none of said mortgages should become payable before September 1st, 1921," and plaintiff in error agreed that the mortgage on the Iowa farm become due July 1, 1927.

It was agreed that in consideration of said transfer and exchange, Mundy and Scott should execute and deliver to plaintiff in error a second mortgage upon the farm in Iowa for $13,150, securing four notes, three for $3,000 each, falling due on March 1, 1921, 1922 and 1923, respectively, and a fourth note for $4,150 to become due March 1, 1924.

It was further provided that the contract, which was to be carried out on or before March 1, 1920, should, with the covenants, and agreements therein contained, extend to the heirs, executors, administra-

tors and assigns of the respective parties, etc., and the contract, to the extent of plaintiff in error's signature, was under seal. It is the undisputed proof that before this contract was executed, the subject of assuming mortgages was discussed and plaintiff in error refused to enter into any contract that contained an assumption of the mortgages. It was further shown that plaintiff in error entered into the possession of the Tazewell county lands, and Mundy and Scott entered into the possession of the Iowa lands either late in January or early in February, 1920, before any conveyances were executed. It is undisputed that Mundy and Scott at no time informed plaintiff in error about the extension of the second mortgage and never recorded said agreement for extension, nevertheless, some time in the winter of 1920, after said contract of exchange had been entered into, Mundy and Scott, upon the pretext that there was a conflict between the terms of said exchange contract and the mortgage notes, induced plaintiff in error to sign a statement in their office at Marshalltown Iowa, written by them as follows:

"Mundy & Scott,
  Real Estate Brokers,
  Marshalltown, Iowa.

"This agreement made in explanation of the contract of the 30th day of December, 1919, in which certain paragraphs of a contract between D. D. Donahue and M. L. Mundy and R. W. Scott conflict: It is agreed between the parties that the said M. L. Mundy and R. W. Scott shall make the mortgage draw five and one-half per cent interest and if they draw more than that they shall reimburse the said Donahue, and the said Donahue agrees to pay the second mortgage on or before September 1st, 1921." Signed by D. D. Donahue, M. L. Mundy and R. W. Scott.

Plaintiff in error, Donahue, testifies that the clause about payment of the second mortgage on or before September 1, 1921, was not in the instrument when he signed it at Marshalltown, and that the statement

covered solely the subject of the rate of interest. In this, plaintiff in error is not contradicted. Plaintiff in error further testifies that Mundy and Scott had agreed to secure an extension of the second mortgage to September 10, 1921, so that both mortgages would come due at the same time, and that he had informed them that he could not handle the property at all with the mortgages coming due at different dates, and this is not contradicted, but, so far as plaintiff in error knew, no extension of time had been secured on the second mortgage when the deeds were exchanged in March, 1920.

The respective deeds and the mortgage and notes to plaintiff in error on the Iowa farm were prepared in the office of Mundy and Scott in Marshalltown, Iowa, and they were sent by their agent, Howe, to Bloomington to effect the transfer with plaintiff in error in the latter part of March, 1920. Howe called up plaintiff in error and fixed the time for the transfer. Howe arrived at plaintiff in error's office in the forenoon and was in a great hurry, as he desired, so he stated, to leave Bloomington on a train in twenty minutes or half an hour. Plaintiff in error and the witness Smith met him. Plaintiff in error asked Howe if the papers were all drawn in accordance with the agreement of December 30, 1919, and Howe assured him they were. Plaintiff in error suggested that they should compare the descriptions of the land and plaintiff in error took the abstracts and read the descriptions and Howe checked the instruments. Howe declared the instruments correct and the deed to the Iowa land was turned over by plaintiff in error to Howe and Howe delivered Mundy and Scott's deed to the Tazewell county farm and the notes and mortgage for $13,150 on the Iowa land to plaintiff in error and Howe hurried to his train. Plaintiff in error without examining the deed to the Tazewell county farm, upon which Mundy and Scott had attached revenue stamps of $13.50 only, inclosed it in an envelope

with the fee, and mailed it to the recorder of deeds at Pekin. Before the return of the deed, plaintiff in error had departed for Iowa, where he was engaged in farming operations and never did see the deed again until in March, 1922. The deed contained a clause, "subject to two mortgages of five thousand dollars each, which grantee assumes and agrees to pay." The only information plaintiff in error ever had that there was such a clause in the deed was when one of the defendants informed plaintiff in error in Iowa, in the late fall of 1921, that the deed contained such a clause, and plaintiff in error, upon his return to Illinois, hunted for the deed, which had become lost and which he did not find until March, 1922.

In entering into the contract with Mundy and Scott on December 30, 1919, Mundy and Scott had made representations to plaintiff in error that they were partners, and had represented to plaintiff in error particular properties which they owned and various businesses in which they were engaged, which rendered them solvent and men of wealth on December 19, 1919. Plaintiff in error relied upon these representations, without which plaintiff in error would not have entered into the contract. On December 30, 1919, Mundy and Scott were not partners and were insolvent. There was an adjustment of the first year's interest by Mundy and Scott with plaintiff in error upon the $13,150 mortgage indebtedness on the Iowa farm, since which time Mundy and Scott have made default and have paid nothing on said indebtedness.

Plaintiff in error was not able to secure the recording of his mortgage for $13,150 in Iowa, and dispose of said mortgage paper in 1920, for the reason that Mundy and Scott did not record their deed for nearly ten months after it was given, and plaintiff in error, though he frequently solicited them, could not get them to record said deed. Plaintiff in error claims to have lost the benefit of a considerable amount of

said mortgage paper by reason of the slump in land values in the latter part of 1920.

Plaintiff in error on August 20, 1920, conveyed the Tazewell county lands to one John W. Eckley, and the title of the farm has passed through the hands of a number of purchasers. Under the allegations in the bill we do not find, as argued by counsel, that Eckley assumed and agreed to pay the mortgages, but it is alleged that the amount of said mortgages was reserved by Eckley out of the contract price of said lands, and Eckley and others were joined as defendants.

The statement of the facts as recited is shown by the exhibits and the uncontradicted testimony of plaintiff in error and the witness Smith.

In July, 1922, defendant in error, residing at Mechanicsville, in the State of Iowa, presented this bill to foreclose said mortgages on the Tazewell county farm. The bill made Mundy and Scott of Marshalltown, Iowa, defendants, and they entered their appearance in writing in this cause and have suffered a personal deficiency judgment to be taken against them.

Defendant in error in his bill sets out the assumption clause, in the deed from Mundy and Scott to plaintiff in error, and relies upon that clause in the deed and that plaintiff in error retained out of the purchase price of said lands sufficient funds to pay said indebtedness, as the only grounds of recovery against plaintiff in error. Plaintiff in error answered the bill, setting out the contract entered into by him with Mundy and Scott on December 30, 1919, and setting out all the other facts and circumstances as recited in this opinion, except as to the agreement signed at Marshalltown, Iowa, with Mundy and Scott in the winter of 1920, which agreement is known as complainant's exhibit 15.

There was a general replication and upon proofs heard before the master, with no findings of fact as to the particular matters set forth in plaintiff in er-

ror's answer, the court overruled the objections which had been made exceptions before the chancellor, and entered a deficiency decree against plaintiff in error, together with the other defendants, for the sum of $4,401.46, and plaintiff in error has sued out this writ.

By the record it is shown that the lands sold for a sufficient sum to pay the first mortgage and a portion of the second mortgage, together with the costs, and that the deficiency all grows out of the second mortgage.

Plaintiff in error has assigned various grounds of error, some of which, at least, are entitled to the consideration of the court. Some assignments of error are urged by plaintiff in error and cases cited that we do not deem applicable to the case. The abstract furnished is not in keeping, in all respects, with the rules of this court, but owing to the importance of the legal principles involved, the writer of this opinion has carefully searched the record and made the statement of the case from what the record fairly and without contradiction presents. The case presented to any *nisi prius* court, in the midst of trial work, in the manner presented here, doubtless would meet with short shrift. Defendant in error relies upon and argues only the usual and virile principle, that a purchaser, accepting a deed containing an assumption clause, knowingly becomes personally liable to pay the debt. There is little in defendant in error's brief to aid the court in the questions involved upon this record, some of which are of first impression to the courts of this State. Defendant in error, by his bill, charges liability, based upon the assumption clause in the deed and upon the implied contract, by retaining sufficient of the consideration moneys for said land to pay the mortgage indebtedness. We shall consider the case first, considering the agreement known as exhibit 15, as though it were not in the case. It has been held that the assumption clause is not an essential part of the deed but is a stranger to the deed.

*Thompson v. Dearborn,* 107 Ill. 92; *Leipold v. Epler,* 198 Ill. App. 621.

In *Thompson v. Dearborn, supra,* the court held: "A contract to assume an incumbrance on land purchased is not one of the essential parts of a deed of conveyance,—indeed, such a contract is a stranger to a deed,—and when the complainants in the bill undertook to bind Thompson by an averment, they should, in some mode, allege the making of a contract between Funk and Thompson, under which the latter would be bound to pay and discharge the mortgage indebtedness. The mere fact that Funk and his wife executed and acknowledged a deed, and inserted therein a clause that Thompson should pay the mortgage named in the deed, would not create a personal liability upon him." And the general rule has been followed in this State: "That where a person becomes the purchaser of real estate by deed, which at the time is incumbered by mortgage, and in the deed conveying the property it is stipulated and agreed that the purchaser assumes and agrees to pay the mortgage as a part of the consideration, the contract creates a personal liability on the purchaser in favor of the holder of the mortgage, which may be enforced in an appropriate action" (*Thompson v. Dearborn, supra*), "and the rule is the same, although there be no assumption of payment of the indebtedness, if the purchase be made expressly subject to the incumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration of the conveyance." (*Drury v. Holden,* 121 Ill. 137.) This has been the rule in Illinois from the earlier cases. *Comstock v. Hitt,* 37 Ill. 542; *Fowler v. Fay,* 62 Ill. 375; *Rogers v. Herron,* 92 Ill. 583; *Rapp v. Stoner,* 104 Ill. 618; *Daub v. Englebach,* 109 Ill. 267, and the later cases have stated the rule to the same effect, with greater terseness. In *Fowler v. Fay, supra,* the court held as to a deed made subject to a mortgage. "But it was decided

by this court in *Comstock v. Hitt*, 37 Ill. 546, that such a clause in a deed creates no personal liability on the part of the grantee to pay the outstanding incumbrance, unless he has specially agreed to do so, or the amount of the incumbrance has been deducted from the purchase price."

Plaintiff in error in the case at bar purchased the lands or agreed to exchange lands under the contract of December 30, 1919. That was a completed contract, in writing, and contains all of the covenants and agreements between the parties, and recites and covers all matters of consideration between them. Under this contract, the equitable title to the properties was transferred to the respective purchasers, just as effectually as though the deeds and conveyances had been delivered. Mundy and Scott became trustees for plaintiff in error of the title to the Tazewell county farm. Plaintiff in error, by the contract, was fully vested with the equitable title to said lands. (*Sutherland v. Goodnow*, 108 Ill. 528; *Rhodes v. Meredith*, 260 Ill. 143.) Plaintiff in error also, under the contract, had fully paid Mundy and Scott for the Tazewell county farm and merely held the legal title of the lands in Iowa as trustee for Mundy and Scott. But Mundy and Scott had not paid plaintiff in error the full consideration for the Iowa lands. Under the terms of the contract between the parties, which was under seal, plaintiff in error was entitled to and agreed to accept title to the Tazewell county farm "subject to" the mortgages in question. This was an express contract, and the contract between the parties and excludes and eliminates any possibility that there could have been an implied contract to assume and pay. (*Walker v. Brown*, 28 Ill. 378; *Phelps v. Hubbard*, 59 Ill. 79; *Siegel v. Borland*, 191 Ill. 112; *Brougham v. Paul*, 138 Ill. App. 460; *City of Chicago v. Chicago Rys. Co.*, 228 Ill. App. 588.) In the last case it was held:

"As in physics, two solid bodies cannot occupy the

same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time.''

In *Siegel v. Borland, supra,* the court said: ''It is only where the parties do not expressly agree that the law implies a promise.'' The contract of the parties having expressly provided that Mundy and Scott should convey and plaintiff in error should receive and accept title, ''subject to the mortgages,'' there is no language found in the contract that creates an assumption or an express agreement to pay the mortgage indebtedness. (27 Cyc., p. 1343; *Siegel v. Borland,* 191 Ill. 111; *Crawford v. Nimmons,* 180 Ill. 143; *Ray v. Lobdell,* 213 Ill. 395; *Assets Realization Co. v. Heiden,* 215 Ill. 9; *Scholten v. Barber,* 217 Ill. 151; *Lane v. Davis,* 158 Ill. App. 653, and *Hirschl v. Meeker's Estate,* 185 Ill. App. 626.)

In *Assets Realization Co. v. Heiden, supra,* the court held: ''A purchaser may assume a mortgage indebtedness, according to the terms of the mortgage, without it being expressly so provided in the deed of conveyance, but in the absence of a written assumption the evidence must be clear and show that the assumption was in fact made.''

In *Crawford v. Nimmons, supra,* it was held: ''A deed which is merely made subject to a mortgage, specified in it, does not render the grantee personally liable for the mortgage debt. To create such a liability there must be something in the nature of a personal, contractual obligation, which amounts to an agreement on the part of the grantee to pay off the encumbrance. (*Fowler v. Fay,* 62 Ill. 375; *Rapp v. Stoner,* 104 Ill. 618; *Comstock v. Hitt,* 37 Ill. 542; 1 Jones on Mortgages, sec. 748; *Consolidated Coal Co. v. Peers,* 166 Ill. 361; 15 Am. and Eng. Ency. of Law 832.)''

In *Siegel v. Borland, supra,* the court said on page 111: ''Either there must be an express assumption of the indebtedness, or the amount must be allowed

in the purchase price, so that the law will imply the promise," citing numerous cases, *supra.* The court further held in *Siegel v. Borland, supra:* "In this case there was no retention by the grantees of any part of the agreed purchase price for the encumbered property. The transaction consisted of a trade, in which Howard P. Simmons conveyed The Cambridge, subject to the trust deed, and block 44 in Cornell, to Philipsborn, as trustee for The Grand, and paid $25,000 in cash and notes, and assumed the leases on the premises occupied by The Grand, at the corner of State and Adams streets, in Chicago. The consideration given to Simmons was the stock of merchandise of The Grand and other merchandise, to bring the amount, at invoice prices, up to $95,000 * * * and the leases on the premises held by the Siegels. The $25,000 was received as a part of the consideration for the merchandise and fixtures transferred to Simmons and not retained out of the consideration for The Cambridge."

The rule in this State has been tersely stated, from all of the authorities, in *Ray v. Lobdell, supra:* "The rule to be deduced from the authorities is, if the vendee of land encumbered by mortgage or trust deed, purchases only the vendor's equity of redemption, he is not personally liable to pay the encumbrance resting upon the land unless he expressly assumed and agreed to pay the same. If, however, he purchases land for its full value and retains in his hands, out of the consideration, a sufficient sum to satisfy the encumbrance, he may be held personally liable for the payment thereof, even though he has not expressly agreed to pay the encumbrance resting upon the land."

Measuring plaintiff in error's rights and liabilities by the terms of the contract of December 30, 1919, it is plain that there was no express contract to assume and pay the mortgage indebtedness, and under the authority of *Siegel v. Borland, supra,* and *Ray v. Lobdell, supra,* and the cases cited, there was no im-

plied contract, in the exchange of equities and farms, upon plaintiff in error's part to pay or assume the mortgage indebtedness. In fact, plaintiff in error had or retained no part of any consideration. He conveyed to Mundy and Scott all that he owned in the Iowa lands and upon their false and fraudulent representations plaintiff in error accepted their notes for $13,150, which were defaulted. But the assumption clause, by the trick and device set out, is found in the deed executed in the latter part of March, 1920, and found in plaintiff in error's hands. It is uncontradicted that plaintiff in error never knew anything about this assumption clause until the month of March, 1922, about four months before the bill was filed. Plaintiff in error had the right to rely upon the actions and conduct of Howe, the agent of the grantors, who was trusted by plaintiff in error to draft the deed and effect the transfer of the papers. It is held in *Bradshaw v. Provident Trust Co.,* 81 Ore. 55, 158 Pac. 274, that where a party to a written contract is intrusted by another to draw a written instrument to accord with a written agreement, he will be held strictly to the faithful performance of the trust so imposed, and will not be heard to say that the party defrauded should not have placed confidence in him. Defendant in error cannot be permitted, in a court of equity, to take advantage of this fraud. (*Leipold v. Epler,* 198 Ill. App. 621; *Wood v. Calland,* 86 Ill. App. 42, and *Sutter v. Rose,* 169 Ill. 66.) In the *Leipold* case it was held: "An undertaking by a grantee recited in a deed is collateral to it, and if the promise fail or be shown to have been the result of fraud or mistake, the undertaking will not be enforced." In *Wood v. Calland, supra,* and *Sutter v. Rose, supra,* similar situations were presented, and the cases were tried upon the theory that the fraud charged entitled the grantee to relief, but in *Wood v. Calland, supra,* the grantee had filed a bill to reform the deed and the court held that it was the duty of the grantee,

at the earliest opportunity after discovering the fraud, to move to correct it the same as in general actions for fraud, and held that the complainant by waiting several years was guilty of laches. The answer of defendant pleaded laches against the complainant. *Sutter v. Rose, supra,* was an action at law and the case went off on the question of laches, which was one of the issues in the case. The issue of laches is not in this case. Plaintiff in error set out all of the detail as to the fraud in his answer and if defendant in error had desired to raise the issue of laches he should have amended his bill and charged the fact that rendered plaintiff in error estopped to raise the question of fraud in this case. (*Ogden v. Stevens,* 241 Ill. 563; *Brockway v. McClun,* 243 Ill. 196.) In the latter case it is held: "A general replication puts in issue the truth of the answer. If the averments of the answer are to be met by new matter, by way of avoidance, it is proper to plead such new matter by amendment of the bill."

The only issue raised by the general replication is as to the truth of the matters charged in the answer. *Stone v. Moore,* 26 Ill. 165; *Brown v. Scottish-American Mortgage Co.,* 110 Ill. 235; Puterbaugh's Chancery Practice, 6th ed., 199.

It was further held in *Kane v. Hudson,* 273 Ill. 352: "It therefore became necessary to amend the bill for the reason that special replications in equity are not permitted, and a complainant must put in issue any fact in avoidance of a matter of defense set up by the defendant by proper charges in the bill of complaint. *Tarleton v. Vietes,* 6 Ill. (1 Gilm.) 470; *White v. Morrison,* 11 Ill. 361"; and *Troup v. Hunter,* 300 Ill. 112.

This defendant in error did not do but is relying upon the allegations in his bill as follows: "That said premises were received by D. D. Donahue, subject to two mortgages of $5,000 each, which he assumed and agreed to pay  *  *  *  and that the amount of said encumbrances was included in and

formed a part of the consideration which said D. D. Donahue paid for the premises, and he retained out of said consideration a sufficient sum to satisfy said encumbrances." These allegations are denied by plaintiff in error's answer, and in addition plaintiff in error makes specific defenses. Defendant in error offered no testimony, except the notes and securities, exhibit 15, and the trustee in the trust deed, who testified to· the ownership of the notes and the computation of interest. Defendant in error must rely upon the allegations in his bill. It is held that no relief can be given, in a court of equity, unless the facts warranting such relief are alleged in the bill. The rule in equity is: "A party must stand or fall by the case made by his bill." *Troup v. Hunter,* 300 Ill. 112; *McKay v. Bissett,* 10 Ill. (5 Gilm.) 499; *Schmitt v. Weber,* 239 Ill. 388; *Chicago, P. & St. L. R. Co. v. Jacksonville R. & Light Co.,* 245 Ill. 165.

If defendant in error were permitted to raise the question of laches, he is confined to the rule in equity that courts of equity apply the doctrine of laches in denial of relief sought when the statutory period of limitations has not expired, only when from all the circumstances in evidence to grant the relief to which complainant would be otherwise entitled will presumptively be inequitable and unjust to the defendants because of the delay. (Puterbaugh's Chancery Practice, 6th ed., 591; *Coryell v. Klehm,* 157 Ill.. 462; *Ross v. Payson,* 160 Ill. 349; *Stiger v. Bent,* 111 Ill. 328.) In an identical case, *Merriman v. Schmitt,* 211 Ill., at page 267, the court held:

"Assuming, as we must, that he had no reason to suppose that the deed to him contained a personal contract on his part to pay the mortgage, he was ignorant of a material fact necessary to a ratification. He could not be held, as a matter of law, to have ratified or confirmed the alleged agreement without knowledge of the material facts. There was no estoppel

*in pais,* because no one entered into any contract or changed his position, or acted in any way on the assumption that Schmitt had entered into an agreement to pay the mortgage.'' No testimony of any kind is offered tending to show that defendant in error, or any other person, changed his position, or that defendant in error was in any manner injured or in fact knew anything about the pretended assumption of said mortgages by plaintiff in error prior to the filing of this bill. It is stated in Ruling Case Law, vol. 19, sec. 147, p. 377: ''A mortgagee certainly cannot object to the release from liability of a grantee of the mortgaged premises who has assumed the mortgage, where the assumption was obtained through fraud, or the provision therefor was inserted in the deed by mistake,'' citing: *Drury v. Hayden,* 111 U. S. 223 (28 L. Ed. 408); *Keller v. Ashford,* 133 U. S. 610 (33 L. Ed. 667). In the last case it is further held that the mortgagee has no greater right than the mortgagor has against the grantee, and therefore cannot object to the striking out, by the court of equity, or to the release, by the mortgagor, of such an agreement when inserted in the deed by mistake. It is the opinion of this court that the assumption clause in question was inserted in the deed without the knowledge or consent of plaintiff in error, and without any consideration therefor accruing to plaintiff in error, and by a trick and device on the part of the grantors in circumvention of plaintiff in error's rights, and was a fraud. It follows, on the authority of *Leipold v. Epler, supra,* that the assumption clause should not be enforced against plaintiff in error. It is equally apparent that plaintiff in error retained no part of the consideration for which said transfer was made from which a promise to pay said indebtedness could be implied.

Did plaintiff in error incur a liability by signing the agreement, exhibit 15? It seems to be an elementary

proposition in this case that the rights of all parties in this matter became fixed by the contract of December 30, 1919. It was under seal. By the terms of the writing, plaintiff in error took upon himself an added burden to pay 5½ per cent interest, whereas one of the mortgages was drawing only 5 per cent. The contract of December 30, 1919, did have the rate of interest on the two mortgages reversed. On the face of the paper plaintiff in error took upon himself the added burden of paying the second mortgage on or before September 1, 1921, if that clause was in the writing when plaintiff in error signed it. Assuming for the sake of argument that plaintiff in error signed the paper as written, defendant in error does not rely upon this agreement in the bill of complaint as a ground of assumption, nor does he, in his brief and argument, urge it as a ground of recovery. Plaintiff in error by the writing, obtained no consideration or advantage by the instrument, but did undertake added burdens.

It is shown by the record, and not disputed, that in September, 1919, before plaintiff in error had had any dealing with Mundy and Scott, that they had extended said second mortgage, absolutely, to December 11, 1922, by a written contract which was never placed of record and of which plaintiff in error never had any knowledge. The making of exhibit 15, under this record, was a fraud and defendant in error, if he knew anything about it, knew it was a fraud and is ineffective to support any equity in behalf of defendant in error for two reasons: first, if it is claimed to be an original contract it is without any consideration and void; and if it is claimed to be a modification of the contract of December 30, 1919, under seal, it constitutes an added obligation upon plaintiff in error (not a waiver), and, being without consideration, is void. In *Heartt v. Sherman*, 229 Ill. 585, Mr. Justice Dunn said: "It is elementary that an executory con-

tract without consideration cannot be enforced in a court of either law or equity.'' In *Corbett v. Cronkhite,* 239 Ill., at page 14, Mr. Justice Carter said: ''Equity will never enforce an executory agreement, unless there was an actual valuable consideration, and, unlike the common law, it does not permit a seal to supply the place of a real consideration.''

In *Thompson v. Dearborn, supra,* and in all the cases bearing upon assumption of mortgages, the contract of assumption is based upon a consideration, the conveyance of land, the withholding of a part of the consideration for land or some other advantage, the same as any other contract; and plaintiff in error, for the signing of exhibit 15, received nothing and was promised nothing. It was a *nudum pactum.* ''The law is well settled in this State that a sealed executory contract cannot be altered, changed or modified by parol agreement.'' *Lanum v. Harrington,* 267 Ill. 63; *Becker v. Becker,* 250 Ill. 117; *Starin v. Kraft,* 174 Ill. 120. But provisions of the contract may be waived. *Kissack v. Bourke,* 224 Ill. 352; *Zempel v. Hughes,* 235 Ill. 432. But the waiver does not apply to an added burden or obligation placed upon either of the parties.

It was held in *Lanum v. Harrington, supra:* ''If it be said that the assurance by appellee that appellants would not be required to pay if they were not able to do so, and that any amount remaining due at appellee's death would be deducted from Mrs. Harrington's share in his estate, amounted to an advancement or bound appellee to bequeath to Mrs. Harrington at least the amount of this indebtedness, then it constituted a change and modification in the terms of the agreement and contract of the parties as represented by the bond for deed, which was under seal. The law is well settled in this State that a sealed executory contract cannot be altered, changed or modified by parol agreement. (*Hume Bros. v. Taylor & Moss,* 63 Ill. 43; *Alschuler v. Schiff,* 164 Ill. 298; *Starin v. Kraft,* 174 Ill. 120.)'' But one seal appeared upon

the contract of December 30, 1919, opposite the name of plaintiff in error, the first signer, which renders the instrument a sealed instrument. (*McLean v. Wilson*, 3 Scam. 51.) The contract of December 30, 1919, had settled all of the rights and obligations of the parties to this suit, and exhibit 15 in no manner changed them, and whatever was the purpose of Mundy and Scott in obtaining the instrument, they and defendant in error knew, if he had any knowledge about the matter, that plaintiff in error was undertaking an obligation impossible to perform. That plaintiff in error was not informed that the second mortgage had been extended to December 11, 1922, was a fraud upon plaintiff in error and in keeping with the incorporation of the assumption clause in the deed.

It has been held in a line of cases commencing with *Thompson v. Dearborn, supra,* and followed by *Merriman v. Schmitt, supra; Ludlum v. Pinckard,* 304 Ill. 449; *Ludlum v. Pinckard,* 221 Ill. App. 135, and other cases, that: "While the general rule is that if the grantee takes and claims title under a deed he takes it by the terms of the deed, yet in order that a grantee be held personally liable for the payment of an incumbrance against the property, it must be shown, in addition to having accepted title to the property, that he assented to the condition of the deed relating to the personal assumption of the debt. Unless it be shown that a grantee in a deed has some reason to suppose that the deed to him contained a personal contract on his part to pay a mortgage or other lien on the property transferred, and that he assented thereto, he cannot be held, as a matter of law, to have assumed such obligation." (*Ludlum v. Pinckard,* 304 Ill., p. 452.)

*Thompson v. Dearborn, supra,* was a case where a decree was entered upon a default to a bill and the court held, under the language of the bill, that it did not state a case against the defendant and the decree of the lower court was reversed. The rule was estab-

lished as early as the case of *Thompson v. Dearborn,*
*supra,* and in *Merriman v. Schmitt, supra,* it was held:
"It is only by acceptance that he becomes bound, and
if the acceptance of the terms of a deed may be pre-
sumed from its being found on the public records,
it would clearly not be a conclusive presumption, other-
wise a personal obligation might be imposed upon
any party without his knowledge or consent, by mak-
ing a conveyance and putting it upon record."

In *Ludlum v. Pinckard, supra,* the court below held
the defendant liable for the indebtedness. The Appel-
late Court of the First District reversed the lower
court on the ground that the testimony did not show
that the defendant intended to assume the payment
of the mortgage, although there was an assumption
clause in the deed. (*Ludlum v. Pinckard, supra.*)
The case was appealed to the Supreme Court and
based upon the testimony that the defendant had paid
$1,000 upon the principal of the indebtedness, the
judgment of the Appellate Court was reversed and
the decree of the lower court affirmed.

In the case at bar no proofs were offered tending
to show that plaintiff in error ever saw or knew any-
thing about the assumption clause until March, 1922,
and all of the proofs in the record contradict the
theory that there ever was any contract or intention
on plaintiff in error's part or the makers of the con-
tract of December 30, 1919, that plaintiff in error
should assume or pay said mortgage indebtedness.
Plaintiff in error has contended for and presented
many well-considered authorities from other States
to establish the rule in those jurisdictions that plain-
tiff in error should have the right to plead any de-
fenses against defendant in error that he might plead
against Mundy and Scott.

We have not found it necessary to go outside of
the authorities of this State to form an opinion as
to the merits of this case and, therefore, have given

no consideration to the cases cited or to the contentions made.

Believing, from a careful review of the record, that the decree of the circuit court of Tazewell county is in error as to the personal liability of and deficiency decree against the plaintiff in error, D. D. Donahue, that part of the decree of the circuit court of Tazewell county finding the plaintiff in error, D. D. Donahue, personally liable for said mortgage indebtedness and entering a deficiency judgment against said plaintiff in error, Donahue, is reversed and said decree in all other respects is affirmed.

*Reversed in part and affirmed in part.*

Mr. Justice Niehaus took no part in the consideration of this case.